CALUMET CONSTRUCTION COMPANY, DEFENDANT IN ERROR, v. THE BOARD OF EDUCATION OF THE CITY OF HOBOKEN, PLAINTIFF IN ERROR.

Submitted November 23, 1909—Decided June 20, 1910.

Defendant employed plaintiff, by written contract, to construct a school building partly of reinforced concrete. The specifications, which formed part of the contract, provided with respect to the reinforcing bars, that "all shear members must be rigidly attached to the main tension member." Dispute arising as to the precise character of bar called for by the specifications, and plaintiff refusing to furnish the bars demanded by defendant, the latter

undertook to rescind the contract for non-performance by plaintiff, and plaintiff sued for damages on the ground that it had been prevented from completing the work by the wrongful act of defendant. *Held*, that on the trial of such suit it was error to exclude testimony that the phrase "rigidly attached" had a peculiar meaning in the concrete construction trade, and if so, what that meaning was.

On error to the Supreme Court.

For the plaintiff in error, *Horace L. Allen* and *Julius Lichtenstein*.

For the defendant in error, *Collins & Corbin*.

The opinion of the court was delivered by

PARKER, J. The board of education of Hoboken contracted with the plaintiff below, a corporation, for the construction of a new school building, the principal building material of which was to be reinforced concrete. The contract and specifications are voluminous, as is usual in such cases, but the dispute between the parties centred around the question what kind of a steel reinforcing bar was required by the specifications. For the defendant it was claimed, in effect, that only one kind of bar, and that a patented article, would answer the requirements; the plaintiff maintained that another bar, adopted and proposed to be used by them, was a compliance with the specifications. Defendant, the board of education, refused to permit the use of plaintiff's bar; the work halted and remained at a standstill for some five months, until defendant, after several times directing service of three days' notice under the contract for failure of the contractor to proceed, finally by resolution formally rescinded the contract, basing the rescission on the contractor's alleged refusal to proceed with the work. This led to the present action which is predicated on the theory that the rescission was unwarranted, and therefore is based on the doctrine enunciated in *Kehoe* v. *Rutherford*, 27 *Vroom* 23, and *Wilson* v. *Borden*, 39 *Id.* 627. The jury returned a verdict of about $27,000,

most of which represents profits that plaintiff claimed it would have earned by being allowed to complete the work, which at the time of rescission had not progressed above the foundations.

A large number of exceptions were taken at the trial and all, or nearly all, are assigned for error. Many of them are without merit, but at least one of them points out a substantial error which must work a reversal and require a *venire de novo*.

The error in question is the exclusion as not involving a subject of expert testimony of the following question asked on defendant's case, of its witness Heidenreich, who had qualified as an expert on concrete construction:

"*Q*. The language, 'Rigidly attached, to the main tension member,' has that a peculiar meaning in your trade or business or in the building business?"

And again:

"*Q*. Does the term, 'Rigidly attached,' as used in this specification and as applied to main tension members, have a peculiar meaning in the reinforced concrete building trade?"

These two questions struck at the root of the controversy between the parties. Their bearing will appear by reading the following extract from the specifications:

"Reinforcing steel:

"No reinforcing steel will be considered which does not provide for shearing stresses as well as direct tension. These shear-resisting members must be inclined .to an angle of forty-five degrees pointing up and towards supports of structure. All shear members to be rigidly attached to the main tension member."

As already noted, defendant claimed that this description pointed to but one kind of a reinforcing bar, and this bar with its shear-resisting members was all in one piece. Consequently an affirmative answer to the two questions, to be followed up by evidence of the peculiar meaning of the phrase, was of vital importance to defendant. The court ruled by its exclusion of the questions that the phrase could not be open to explanation as a trade term. This, we think, was

error. The words seem plain enough in themselves, but if it be made to appear that their meaning was ambiguous on account of trade usage, the rule is well settled that evidence of such trade meaning will be received. *Jones Ev.*, §§ 462, 463; 17 *Cyc.* 685, 686. Applications of this rule will be found in *Neldon* v. *Smith,* 7 *Vroom* 148, 153 ("immediate delivery"), and *Halsey* v. *Adams,* 34 *Id.* 330 ("reduce"), as well as in the celebrated Zinc case of *New Jersey Zinc Co.* v. *Boston Franklinite Co.,* 2 *McCart.* 418, where the meaning of the word "zinc" in a deed was derived from extraneous sources. Recurring to the present case, defendant was clearly entitled to show, if it could, that the words "rigidly attached" had a trade meaning, and if so, what that meaning was.

For this reason the judgment must be reversed and a *venire de novo* awarded.

*For affirmance*—None.

*For reversal*—The Chancellor, 'Chief Justice, Garrison, Swayze, Trenchard, Parker, Bergen, Voorhees, Bogert, Vredenburgh, Vroom, Gray, Congdon, JJ. 13.