JOHN H. HINCHMAN AND HENRY HOPPER v. HENRY K. RUTAN.

1. A state of demand in the justice's court must not join a count in debt with a count in *assumpsit* for unliquidated damages.
2. A writ of error is not such process as requires a revenue stamp, under the United States revenue act.

Error to the Supreme Court.

For case and opinion of the court below, see 1 *Vroom* 255.

For plaintiffs in error, *J. Hopper*.

For defendant, *S. Tuttle*.

BEASLEY, CHIEF JUSTICE. This case originated in the court for the trial of small causes. The state of demand contained two counts. The first set forth a sale and delivery, by the plaintiffs to the defendant, of a horse, for the price of two hundred dollars; gave credit for the payment of one hundred dollars, and demanded the balance.

The second count is founded on a special agreement, and states that the plaintiffs agreed with the defendant to sell to him a certain horse of the value of two hundred dollars for one hundred dollars in cash, and also for a lot of land of the value of one hundred dollars. That the plaintiffs delivered their horse to the defendant, who thereupon paid the one hundred dollars in cash, but refused to convey the lot. The count concludes with a demand of the balance of the value of the said horse, to wit, one hundred dollars.

The question for decision is, whether the causes of action embraced in this demand can be joined.

The first count is in debt. It is founded on a simple contract for the payment of money, and by the express language of the statute this form of remedy is the only one in

which such claim is enforceable in the justices' court.  *Nix.*
*Dig.* 433, § 78.*

The second count is in case.  The defendant's agreement,
for the non-performance of which suit is brought, was that
in consideration of a horse sold and delivered to him he was
to pay to the plaintiffs one hundred dollars, and also to con-
vey to them a lot of land.  The money was paid, and the
breach of contract was the defendant's refusal to convey the
land.  It is obvious that for this breach the plaintiffs were
entitled to recover damages, the measure of which was the
value of the land.  By force of the contract the plaintiffs
were entitled to the land; losing this by the failure of the
defendant to perform the agreement, and as at law there
could be no specific performance, damages were recoverable
as an indemnification.  In consequence of his non-perform-
ance, the defendant became liable to an action to render to
the plaintiffs an equivalent for the land which he had refused
to transfer to them; but he did not thereby owe them a debt.
It is true that at the close of the second count the plaintiffs
demand a debt, that is, the balance of the value of the horse
they had delivered to the defendant, to wit, one hundred dol-
lars.  But this demand is legally illogical, and can have no
effect.  The plaintiffs' claim with which a count concludes, to
have any efficacy, must coincide with the conclusion of law
from the premises stated in the pleadings.  The plaintiffs call
for the payment of a fixed sum of money, but the legal induc-
tion from the facts stated in the count is, that the defendant is
liable for an amount of damages not ascertained.  The require-
ment of the law, not the demand of the plaintiffs, must be ful-
filled.  These are first principles, which need neither argument
nor the citation of authorities in their support.  It would be
difficult to find even a dictum which would sustain the notion,
that on the breach of a contract to convey land thereby a debt is
created.  The recompense in such case has always been in
damages, the measure of those damages being usually the
value of the land withheld.

As the first count of this demand **is** in debt, and the

* *Rev.,* p. 543, § 22.

second in *assumpsit* for the recovery of unliquidated damages, there is a clear misjoinder of actions; and on this account the judgment of the pleas was properly reversed in the Supreme Court.

On the argument it was insisted that by the history of this case, and which was introduced here by the consent of counsel, it appeared on the trial that the agreement mentioned in the second count was not in writing, and was therefore void by the operation of the statute of frauds. The argument was that the contract being thus void, the law raised an assumption on the part of the defendant, to pay the balance of the value of the horse which had been delivered to him. But this suggestion does not reach the difficulty. The question of misjoinder must be settled by the record. If the second count had declared the contract embraced in it to be oral, and not committed to writing, there would have been force in the position of counsel. But the count is silent on this head, and the inference of law is that the contract stated was a legal one. It has uniformly been held since the time of Charles II., when the statute of frauds was first enacted, that in declaring on a contract within its operation, it need not be alleged or specifically shown that the contract was in writing. The count, as it stands upon the record, exhibits a claim to unliquidated damages valid at law, and it cannot be transformed into the demand of a debt by any proof in the case. The court is asked to apply the evidence to a count sounding in damages, and thereby convert it into the demand of a debt. With as much propriety the same request might be made, if the second count were in covenant or trover. By such laxity in the application of legal rules, all distinctions between the several forms of actions would be confounded. It is true, that technical formality in the proceedings in the court for the trial of small causes is not exacted. But a state of demand embracing claims not suable in the same form of action presents too wide a departure from principle to receive the sanction of this court.

The judgment of the Supreme Court should be affirmed.

Hinchman v. Rutan.

Previous to the argument on the question above disposed of, a preliminary motion was made to dismiss the writ of error in this case, on the ground that such writ has not affixed to it a stamp, as required by the United States revenue law.

The requisition of the statute referred to is, that a stamp of a certain denomination shall be put on "the writ or other original process by which any suit is commenced in any court of record, either law or equity." *U. S. Stat. at Large,* 1862, *p.* 483. And by the ninety-fifth section of the same act, it is declared that all instruments, documents, or papers requiring stamps, which shall be issued without them, shall be deemed invalid and of no effect.

It was insisted that both the requisition and the penalty apply to writs of error, and that the writ in this case being unstamped, was invalid, and should be quashed.

It is to be remarked that statutes imposing burthens have always been construed strictly against the government. The English rule is, that when there is any doubt as to the meaning of a stamp act, it ought to be construed in favor of the subject, because a tax cannot be imposed without clear and express words for that purpose. *Gurr* v. *Scudds,* 11 *Excheq. R.* 190. Collins, in his work on the stamp acts, observes: "The stamp acts being considered as imposing a charge upon the subject, the cases in which they are to apply ought to be fairly marked out, and a liberal construction should be given to the words of exemption confining their operation ; and if the words in any particular act are ambiguous, the party insisting that the instrument ought to be stamped must clearly make out the affirmative of that proposition."

But it is not perceived how, by any fair construction whatever of the language of the act to be considered, writs of error can be brought within the scope of the clause in question. A writ of error is not, either in the popular or technical signification of the terms, a writ or original process by which a suit is commenced. The peculiar office of the writ

of error is to remove a suit which has not only been commenced but also carried to judgment. By it the proceedings, but not the suit, are commenced in the appellate court. At the common law, this writ was in the nature as well of a *certiorari* to remove a record from an inferior into a superior court, as of a commission to the judges of such superior court to examine the record and affirm or reverse it, according to law. Where error *in fact* had supervened it lay to the same court in which the judgment had been rendered—a circumstance which would seem almost conclusively to establish, that it does not originate a suit. *Co. Lit.* 288 *b ;* 2 *Bac. Ab., tit. Error,* 448 ; 2 *Inst.* 40 ; 1 *Roll. Ab.* 747, *pl.* 13. So it may be brought by the party who was defendant in the inferior court, and then it assumes the characteristics of a defence rather than those of a suit. Or the original plaintiff may resort to it as a means to reverse his own judgment so as to enable him to bring another action, as in the case of *Johnson* v. *Jebb,* 3 *Burr.* 1772. This transmission of the record from one court to the other, by the plaintiff who has begun his action and prosecuted it to judgment in the inferior court, cannot, as it would seem, be with propriety, denominated the commencement of a suit in this court. The fact is that the suit begins in the subordinate tribunal and ends in the court of the last resort. And the writ of error, instead of being the method by which the suit is commenced, is that by which it is terminated. Besides, the origination of a suit is scarcely attributable to a judicature whose powers are wholly appellate. This court does not possess any original jurisdiction, and even after judgment here, the record is remitted and the decision of this court effectuated by the aid of the inferior tribunal. This view, that the proceeding in error is merely a continuation of the original action, and not the initiation of a new suit, is sustained by the authorities. Sergeant Williams, in his admirable Treatise on Pleading, thus expresses himself : "The course of the action till the entry on record of the final judgment has now been described ; but the reader will not have a complete view of the history of the

suit without taking some notice of two other subsequent pro-
ceedings. These are the writ of execution and *the writ of
error.*" *Step. Pl.* 115. Thus the writ of error is here
recognized as a necessary part of the history of the suit, and
as much so as the original process by which it was commenced.
From first to last the unity of the proceeding is admitted.
So the decision in the case of *Wright* v. *Nutt*, 1 *T. R.* 388,
supports the same principle. The attorney of the defendant
in the case referred to, agreed that no writ of error should
be brought by his client—and the court held such agreement
obligatory. The only ground on which the adjudication can
rest is, that the writ of error was part of the original pro-
ceedings, as otherwise the stipulation of the attorney could
not have been enforced against the client.

There was a clause in the statute of 27 *Eliz.*, c. 8, very
similar to that portion of the act of congress now under dis-
cussion. The provision referred to was to the effect that
judgments rendered in certain enumerated actions " first
commenced " in the King's Bench might be removed for re-
view into the Exchequer Chamber. And the question raised
was, what was an action within the meaning of the terms
" *first commenced ?* " and it was decided that a suit on error
in the King's Bench did not answer that description. If the
writ of error was the first process in a new suit, this result
could not logically be arrived at. *Heyden* v. *Godsole*, 2
*Bulstrode* 162. Lord Coke, who decided this case, uses this
language : " No writ of error lies in the Exchequer Chamber
upon a writ of error brought here ; when the judgment is
originally here, upon a *suit here begun*, a writ of error lies
to the Exchequer Chamber, but not otherwise." The point
of the decision is, that by a writ of error a suit was not be-
gun in the King's Bench. This case appears to rule the
question now under consideration.

On the above grounds, I have arrived at the conclusion,
that a writ of error is not such process as requires a revenue
stamp under the act of congress.

The question was not presented in this case, and I have

not therefore considered what would be the effect of an omission to stamp, in conformity to the act above referred to, process issued by any court in this state which requires a stamp. I understand that this court does not, at this time, intend to express any opinion upon that subject.

Such motion comes too late. The party moving has pleaded to the errors assigned. By doing this he has waived all imperfections in the process. After issue joined, it would be both unjust and anomalous to permit the party to point out errors in the writ. A defendant, by pleading to the action, always admits the jurisdiction of the cause. In the case of *Ward* v. *Ward*, 2 *Zab.* 710, it was held in this court, that after the case was read and the argument commenced, it is too late for the defendant in error to call in question the existence of the bill of exceptions, and that the court would hear and determine reasons of reversal assigned upon the printed bill of exceptions, without looking into the fact whether a bill of exceptions had actually been signed. This practice appears to rest on solid principles, and prevails in all the courts.

Judgment of Supreme Court affirmed.

*For affirmance*—BEASLEY, C. J., CORNELISON, ELMER, GREEN, CH., HAINES, OGDEN, WALES, WOOD.    8.

*For reversal*—KENNEDY, VAN DYKE.    2.