WILLIARD G. WILKINSON, RESPONDENT, v. ORANGE MOUNTAIN LAND COMPANY, A CORPORATION OF THE STATE OF NEW JERSEY, APPELLANT.

Submitted February 11, 1927—Decided May 16, 1927.

1. Requests, not made in the alternative, for instructions to the jury which would be inconsistent to the extent of defeating each other, are properly refused.

2. Where a contract provided for complete payment by the defendant to the plaintiff upon the happening of a definite event during the performance of the work or services covered by the contract but before the entire completion thereof, and then after the happening of that event, performance of certain items of said work or services covered by the contract and to be subsequently performed, was wrongfully prevented by the defendant, the plaintiff became entitled to recover the full contract price less a deduction (calculated according to the rule laid down in *Kehoe* v. *Rutherford*, 56 *N. J. L.* 23) because of the unperformed work, but the burden of establishing by proof the proper amount of the deduction is, in such circumstances, upon the defendant, and, consequently, in the absence of such proof, the recovery by the plaintiff of the full contract price was proper.

---

For the appellant, *Grosso, Brundage & Anderson* (*Norman N. Brundage*, of counsel).

For the respondent, *Stamler, Stamler & Koestler*.

The opinion of the court was delivered by

WHITE, J. The plaintiff is a golf-course architect, and as such brought suit on a contract in writing with the defendant corporation for the contract price of his services as such architect in designing, preparing plans and specifications for and laying out an eighteen-hole golf course on one hundred acres of defendant's tract of one hundred and twenty acres of land in the Orange Mountains, in the town of West Orange. Under the terms of the contract the plaintiff was also to act in an advisory capacity to the defendant company in all matters pertaining to the "promotion" and planning of such golf course, and to stake out all trees, fairways, greens, traps and bunkers, and to make necessary models of greens so that the same might be built with the desired characters and undulations as indicated on the architect's plan. The architect was also to use his professional status and his best efforts to carry out the designing and construction of the golf course to a successful completion. The contract provided that the company should pay the architect the sum of $2,000 in the following manner: "Two hundred and fifty dollars on the delivery of details, plans and specifications, and $1,750

at such time as the company shall have decided to proceed with the construction of the said golf course;" and, further, "that in case the company shall decide not to construct the golf course on the property aforementioned, the initial payment of $250 shall be in full settlement and satisfaction for any services which the said architect may have rendered to the said company, and shall complete the terms of this contract."

The plaintiff prepared and delivered under defendant's direction a complete plan and prospectus of the golf course on defendant's land, staked out the tees, traps, bunkers and greens, and received from the defendant company the $250 specified in the contract to be paid him upon delivery of details, plans and specifications. He also attended one or more conferences or meetings with stockholders and directors of the defendant company and assisted in the formation of a golf club composed of some of the members of the defendant corporation and certain others, for the purpose of taking over the portion of the defendant's property designed to be used for the purposes of the golf course, in order that the construction of the golf course as contemplated might go forward to completion, the remainder of the defendant's property to be promoted and sold by them for building lots. In order to successfully accomplish this purpose of procuring members for the golf club, so that the construction and maintenance of the golf course and its resulting benefit to defendant's adjoining lots might be successfully accomplished, the plans prepared by the plaintiff and his letter of description over his professional signature, pointing out the superior attractions of the property in certain respects for a golf course, were printed in a prospectus by the defendant company and distributed to prospective members of the new golf club. In a very short time sufficient club members were procured to insure the success of the golf club scheme for constructing the contemplated golf course and that club was duly incorporated under the laws of the State of New Jersey under the name of the Rock Spring Country Club, whereupon the defendant corporation conveyed to the newly incorporated golf club the portion of its lands (about one hundred acres out of the total of one hundred and twenty acres) which had been

laid out and promoted as a golf course by the defendant company with the assistance of its golf architect, the plaintiff, as before stated. The new golf club thereupon proceeded with the construction of the golf course and the defendant company now refuses to pay the remaining $1,750, which, according to the terms of the written contract, became due from it to the plaintiff, "upon its deciding to proceed with the construction of the golf course," on the ground that it in fact never did decide to proceed with the construction of a golf course, but, on the contrary, by conveying the ground in question to a golf club, in effect decided not to construct the golf course.

The learned trial judge thought that under the evidence in the case it was for the jury to decide whether or not the defendant company had not in fact decided to proceed with the construction of the golf course within the terms of the contract, by promoting and bringing about a golf club for that purpose and by conveying the proposed golf grounds to that club in order that the golf course might be constructed and operated, and, therefore, declined defendant's motion for a directed verdict in its favor and instructed the jury accordingly. The jury brought in a verdict for the plaintiff for the unpaid remainder of the contract price. We are in agreement with the ruling of the learned trial judge upon this point.

It appeared, however, that the plaintiff-architect in fact did not prepare and furnish the "necessary models for the greens" of the golf course, but it also appeared that these models could not properly be prepared until the construction of the golf course had reached a stage at which the greens were ready for surfacing, which, of course, was subsequent to the time when the $1,750 became due the plaintiff "upon the defendant company deciding to go ahead with the construction of the golf course." But it also appeared that the reason the plaintiff did not furnish these models was that he was prevented from doing so by the transfer of the golf grounds to the newly-incorporated golf club, and the employment by the latter of someone else to do this portion of the work and to superintend the laying out and surfacing of the greens. It is claimed, therefore, that the learned trial judge erred in

declining to affirm defendant's first and second points, which read, respectively, as follows:

"1. If the jury shall find that the Orange Mountain Land Company prevented plaintiff from performing the contract sued on in this case, then your verdict must be for such a portion of the entire price as the fair cost of the work done bears to the fair cost of the whole work, and in respect to the work not done such profits as he would have realized by doing it."

"2. If the jury shall find that the Orange Mountain Land Company prevented the plaintiff from performing the contract sued on, and as there is no evidence to indicate either the value of the work performed or the profits the plaintiff would have realized if he had performed, your verdict must be limited to nominal damages."

The instructions requested in these two points seem rather inconsistent with each other. Request No. 1 asks the court to charge that the verdict must be for the contract price less a deduction for unfinished work, while request No. 2 asks the court to charge that under exactly the same circumstances, plus a suggestion of lack of proof, the verdict must be limited to nominal damages. Requests for inconsistent instructions not made in the alternative would defeat each other and should be refused. This is so because as requests not made in the alternative are for instructions which are to operate together and at the same time, they are, if inconsistent, mutually destructive of each other. The jury cannot follow the instruction of either without disobeying the instruction of the other.

Assuming (but not deciding), however, that these two requests, by reason of the lack-of-proof suggestion in one of them, do not offend the inconsistency rule, we think each of the requests was properly refused. They both invoke the rule established in *Kehoe* v. *Rutherford*, 56 *N. J. L.* 23 (followed by numerous other cases), to the effect that where the work contemplated by a contract was only partially performed because complete performance was wrongfully prevented by the defendant, the measure of damages which the plaintiff is entitled to recover is the proportionate portion of the whole

contract price which the work done bears to the entire work covered by the contract, plus the profit which the plaintiff would have made in performing the remainder of the work if he had not been wrongfully prevented from so doing. There is no question but that this is the well-settled law, and if there had been evidence to support its application to the present case the defendant would clearly have been entitled to an affirmance of the first request. The evidence, however, failed to supply one element essential to the application by the jury of the requested instruction, namely, proof of what was the proportionate value of the work done and of what would have been plaintiff's profit in the work undone. Theoretically, at least, a jury is not entitled to arrive at its verdict by guess-work, and it would have been worse than idle for the court to instruct it to allow the defendant a credit for the proportionate value of the work not done less plaintiff's profit therein, when there was, as here, absolutely no proof of how much in dollars and cents such credit should amount to.

This brings us to the second request, which seeks the benefit for the defendant of this absence of proof, and if the burden was upon the plaintiff to supply the missing proof in order for him to establish his right to recover, the defendant would clearly have been entitled to an affirmance of this request. The question here involved, therefore, resolves itself into one of the burden of proof. In the Kehoe case (*supra*), and in the others following it, the plaintiff, according to the terms of the contract, was only entitled to be paid upon the completion of the work to be done by him under the contract. Obviously, the burden was on him to show that the time had come when he was entitled to be paid. In order to do this he had to prove that he had completed the work, or if he had not done so, that he had been wrongfully prevented by the defendant from performing the part of it which he had not completed. In the latter situation, of course, he could not show himself entitled to receive the full contract price because that only became due upon the full completion of the work, which in fact had not taken place. All that he could show in order to entitle him to recover was that he had been wrongfully prevented by the defendant from performing part of

the work and had in fact performed all the rest of it. This proof, however, furnished no criterion from which the jury could fix the amount he was entitled to receive and, of course, the burden was upon him to supply proof which would enable the jury to fix this amount.

In the present case the situation is entirely different. The plaintiff became entitled to receive the remainder of his pay, $1,750, not upon the completion of the work, but long before that time, namely, upon the defendant deciding to go ahead with the performance of the work, that is, with the construction of the golf course. All that the plaintiff had to prove, therefore, in establishing the fact that he is entitled to be paid this $1,750 is the happening of the event, upon the happening of which, his money became due, namely, the decision of the defendant company to go ahead with the construction of the golf course. That event having been established, the contract itself fixed the amount that the plaintiff was then entitled to receive. This being so, if the defendant desired a reduction of this amount because of a claim to credit for subsequent failure of performance, the burden was upon him to prove that failure and also to prove the amount of the resulting credit. In this respect the case is somewhat analogous to that of a "substantial performance" of a contract, which puts the burden of proving credits resulting from minor omissions or faults upon the defendant who claims the benefit of the credits. *Dyer* v. *Lintz*, 76 *N. J. L.* 204. We think, therefore, that the learned trial judge properly refused the second request also.

For the reasons above stated the judgment is affirmed, with costs.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, KALISCH, BLACK, KATZENBACH, CAMPBELL, LLOYD, WHITE, VAN BUSKIRK, MCGLENNON, KAYS, HETFIELD, DEAR, JJ. 15.

*For reversal*—None.