21 N.J. Super. 227 (1952)
91 A.2d 98
W. BURDETTE WILKINS, PLAINTIFF-RESPONDENT,
v.
BAILEY ENGINEERING CO., INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued July 28, 1952.
Decided August 28, 1952.
*228 Before Judges DANIEL J. BRENNAN, McLEAN and EWART.
Mr. Michael A. Dwyer argued the cause for the appellant (Messrs. Doughty & Dwyer, attorneys).
Mr. John H. Jobes argued the cause for the respondent.
The opinion of the court was delivered by EWART, J.S.C.
This is an appeal from a final judgment entered in the Bergen County Court on December 5, 1951 for damages of $1,687.70, plus costs, in favor of plaintiff-respondent and against the defendant-appellant, and a judgment of no cause for action on the defendant's counterclaim against the plaintiff. The verdict of the jury in favor of the plaintiff was for $1,580 with interest from October *229 10, 1950, and a verdict of no cause of action on the defendant's counterclaim.
The complaint is based upon the employment of the plaintiff, a consulting engineer, by the defendant corporation, whereby plaintiff was authorized to design and manufacture molds to be used in the production by defendant of insulated shipping containers which were to be fabricated of fibre-glass mat, polyster resins, and cardboard, at an agreed price of $1,800 for the job, the agreement providing that the defendant was to produce a quantity of not less than 24 sample units of said molds, with one complete unit to be delivered not later than September 25, 1950. A written memorandum of said agreement, dated September 15, 1950, referred to in the amended complaint, was annexed to the amended complaint and was admitted in evidence as Exhibit P-1. The written memo further provided that the defendant should pay the plaintiff as a supervisory and consultation fee 50 cents for each unit of said containers thereafter produced by the defendant.
Plaintiff's amended complaint is divided into three counts as follows: In the first count, he alleges an express verbal contract between the parties entered into August 14, 1950 calling for a fixed price of $1,800 plus a further fee of 50 cents for each shipping container produced by defendant, later modified by agreement of the parties to include certain changes for which it is claimed the defendant agreed to pay for additional services rendered and materials supplied by the plaintiff; alleges the defendant defaulted its obligations under the agreement, thereby preventing the plaintiff from performing, and demands as damages, not the contract price of $1,800 plus extras, but "the value of plaintiff's services, together with the value of the materials supplied under the contract as modified * * *."
The second count is based upon a quantum meruit for the value of plaintiff's services.
The third count is for an accounting by defendant of the number of shipping containers produced by defendant coupled *230 with a demand for damages of 50 cents for each container produced, but this count was abandoned by plaintiff at the trial. (D114A)
In both the first and second counts of his amended complaint, plaintiff alleges the value of his services rendered plus the value of materials furnished by him to be the sum of $2,350; gives credit for a $400 payment on account made by defendant; and demands damages of $1,950.
It may be noted, in passing, that while the first count of the amended complaint is based upon an alleged verbal agreement which included a fixed price of $1,800, the demand for damages in that count is for the value of plaintiff's services and not for the contract price, plus extras. The plaintiff first pleads an express verbal agreement calling for a fixed price and then anomalously switches over in his demand for damages to quantum meruit.
Defendant by its answer admits that after negotiations between the parties an agreement was reached, as evidenced by the written memo of September 15, 1950 (Exhibit P-1); denies that the plaintiff produced the molds contemplated by said agreement; denies the contract reached was ever modified by verbal agreement or otherwise after September 15, 1950; denies the plaintiff performed his contract as agreed and admits that it advanced to the plaintiff the sum of $400 of the agreed contract price of $1,800.
By way of counterclaim, defendant seeks a judgment against the plaintiff for the $400 advanced by it to the plaintiff, because of the alleged failure of the plaintiff to fulfill its contract, and the further sum of $600 representing the value of certain labor and materials supplied by defendant to the plaintiff at the latter's request and for which, it is claimed, the plaintiff agreed to reimburse the defendant.
Defendant-appellant argues that the judgment should be reversed because at the trial, over the defendant's objection, the court permitted the plaintiff to testify to the negotiations and conversations leading up to the written memo of September 15, 1950 (Exhibit P-1), by which the *231 defendant authorized the plaintiff to proceed with the work of designing and manufacturing the molds to be used by defendant in the production of the said shipping containers. Defendant insists that the agreement between the parties was evidenced by the written memo or work order (Exhibit P-1) and that the trial court erroneously permitted the plaintiff by his testimony to alter and vary the terms of a written agreement between the parties, contrary to the well-known rule laid down in Naumberg v. Young, 44 N.J.L. 331 (Sup. Ct. 1882), and the myriad cases following it.
In support of its contention, appellant points to the testimony of the plaintiff to the effect that the conversations and negotiations took place prior to August 14, 1950 and that the work order of September 15, 1950 (Exhibit P-1) was to include not only the work that was to be done in the future, but also the work which the plaintiff had completed prior to that date. Nevertheless, over the defendant's objection the court permitted the plaintiff to testify to conversations with a representative of the defendant corporation had in June, July and August preceding the written memo of September 15, 1950, to show the terms of the agreement between the parties including the number of hours work which the plaintiff devoted to the job in question, the hourly rate, the terms of the contract as originally made and as modified, the price agreed upon, etc.
And in its charge to the jury the trial court left it to the jury to determine from the testimony and the proofs what the terms of the agreement or arrangements between the parties actually were.
An examination of the record reveals that the changes and modifications in the verbal contract upon which the plaintiff rests his suit took place prior to September 15, 1950, upon which date the written memorandum or work order was delivered to plaintiff (Exhibit P-1) (Appendix, pp. 50A, 51A and 59A) and that is particularly true of the change agreed upon calling for a sheet metal lining in the molds (Appendix, pp. 42A, 43A, 60A).
*232 The written memo of September 15, 1950 (Exhibit P-1) appears to be complete on its face insofar as relates to the obligation of the plaintiff to design and manufacture the molds in question from which the insulated shipping containers were to be produced by the defendant; complete as to the quantity to be designed and manufactured by the plaintiff; complete as to the price to be paid therefor; and complete as to the date of delivery of one complete unit. And the testimony of the plaintiff himself supports appellant's contention that the conversations and negotiations regarding the job, the terms and price, were all had prior to the giving of the written memo of September 15, 1950, Exhibit P-1.
We find that the trial court, in permitting this verbal testimony by the plaintiff, over the defendant's objection, of the negotiations and conversations that took place prior to the delivery of the written memo or work order, violated the principle imbedded in our law which declares that in the absence of fraud or illegality, where a written agreement is complete on its face, oral testimony will not be permitted either to vary, alter, or contradict it, or to supply terms with respect to which the writing is silent. Naumberg v. Young, supra; Ross v. Orr, 3 N.J. 277, at 282 (1949); Schlossman's Inc. v. Radcliffe, 3 N.J. 430, at 434 and 435 (1950); Massari v. Accurate Bushing Co., 8 N.J. 299, at 316 (1951).
Defendant-appellant further argues under points 2 and 3 of its brief that the trial court used an erroneous measure of damages in submitting this case to the jury.
The trial court, by its instructions, submitted the case to the jury on the theory that if the jury should find in favor of the plaintiff, the verdict should be for the balance due on the agreement, Exhibit P-1, ($1,800 less $400 advanced by the defendant to the plaintiff) namely, the sum of $1,400 plus plaintiff's expenditures of $180 for extra material, etc., and that is apparently the standard followed by the jury in arriving at its verdict of $1,580 in favor of the plaintiff, *233 plus interest. Defendant-appellant took exception to that portion of the charge.
By the terms of the written agreement, or work order, a copy whereof is annexed to the amended complaint and a copy of which was also offered in evidence and marked Exhibit P-1, the plaintiff was to design and manufacture 24 molds to be used by the defendant in the production of insulated shipping containers for a total price of $1,800, one of which complete units was to be delivered by the plaintiff not later than September 25, 1950. Nothing is said in the memorandum about when payment is to be made, which leads to the conclusion that the plaintiff would not be entitled to payment until he had fully performed the contract. However, plaintiff says, and sues upon the theory, that he was prevented from fully performing the contract by the fault of the defendant (D114A). Under that state of facts, the legal measure of the damages which the plaintiff would be entitled to recover is, generally, for the work done, such proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and in respect to the work not done, such profit as he would have realized in doing it. Kehoe v. Rutherford, 56 N.J.L. 23 (Sup. Ct. 1893); Cavanagh v. Borough of Ridgefield, 94 N.J.L. 147 (E. & A. 1920); Wilkinson v. Orange Mountain Land Co., 103 N.J.L. 683, at 688 and 689 (E. & A. 1927); Goldman v. Shapiro, 16 N.J. Super. 324, at 327 (App. Div. 1951); DePonte v. Mutual Contracting Co., 18 N.J. Super. 142 at 148 (App. Div. 1952).
Under the foregoing rule, plaintiff would only be entitled to recover the full agreed price of $1,800, less $400 credit for an advance made to him by the defendant, plus the cost of extra material, had he fully performed the contract. That, admittedly, he did not do. He says he was prevented by the fault of the defendant. The trial court committed error in permitting the jury to award damages for the full contract price, less credit for advances, when the contract was not in fact completed.
*234 In view of the foregoing, it is not necessary to pass upon the questions argued under point 4 of appellant's brief.
For the foregoing reasons, both the judgment in favor of the plaintiff on his complaint and the judgment against the defendant on its counterclaim, will be reversed and a venire de novo awarded.