**BEAVER VALLEY PAINTING, INC.,** and National Union Fire Insurance Company, Plaintiffs,

v.

**TERMINAL CONSTRUCTION CORPORATION, Defendant.**

Civ. A. No. 292–60.

United States District Court
D. New Jersey.
Dec. 27, 1962.

Max E. Greenberg, New York City, for plaintiffs.

Heller & Laiks, Passaic, N. J., for defendant, by Murray A. Laiks, Passaic, N. J.

WORTENDYKE, District Judge.

The Court's jurisdiction in this action is appropriately predicated upon diversity of citizenship with the requisite jurisdictional minimum involved. 28 U.S.C. § 1332(a). Plaintiff, Beaver Valley Painting, Inc. (hereinafter Beaver Valley), a painting subcontractor with Terminal Construction Corp. (Terminal), sued Terminal for damages for breach of the subcontract. Terminal counterclaimed against Beaver Valley, joining Beaver Valley's bond surety as a co-plaintiff to respond, with Beaver Valley, to the counterclaim. Terminal was the general contractor with the designee of the Secretary of Defense of the United States for the construction of a housing project for the accommodation of members of the armed services at Fort Dix, New Jersey.

The case was tried to a jury, which returned a verdict for Beaver Valley against Terminal in the sum of $29,-394.76, a verdict in favor of Terminal against Beaver Valley upon one of the counts of Terminal's counterclaim, in the amount of $1,324.94, and a verdict of no cause for action against Terminal on the remaining counts of its counterclaim.

At the close of the evidence for Beaver Valley and again at the close of all of the evidence, Terminal moved for dismissal and for a directed verdict of and upon the complaint. Both motions were denied by the Court, and the case was submitted to the jury. The verdicts were returned on October 11, 1962 and judgment thereon was entered on October 25, 1962.

Terminal now moves for judgment notwithstanding the verdict and, in the alternative, for a new trial, F.R.C.P. 41(b) and 50; Montgomery Ward & Company v. Duncan, 1940, 311 U.S. 243, 61 S.Ct. 189, 85 L.Ed. 147.

Terminal contends (1) that the evidence was insufficient to support the verdict in favor of Beaver Valley upon the issue of damages and (2) that Beaver Valley was not entitled to recover from Terminal because Terminal had been released from all claims which accrued prior to April 30, 1959, the date of a release in writing which, by the terms of the contract between the parties, the subcontractor was required to give to the general contractor in exchange for payment of each installment of the contract price.

Terminal contends that the sole measure of damages applicable to that issue in this case is that enunciated in Kehoe v. Mayor, etc., of the Borough of Rutherford, N.J.Sup.1893, 56 N.J.L. 23, 27 A. 912, and that because of the lack of evidence supportive of one of the criteria for the determination of damages in Kehoe, there was a failure of proof of damages in the case at bar which disentitled Beaver Valley to an affirma-

948

tive verdict against Terminal in more than a nominal amount.

In its main charge in this case, the Court included language from the opinion in Kehoe, as well as language from the opinion in United States v. Behan, 1884, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168, and permitted the jury to apply the measure of damage enunciated in either of the cited cases, depending upon the jury's findings respecting evidence or lack of evidence disclosing the elements of proof required by either of the two authorities.

Kehoe involved a written contract with the defendant municipality for the grading of a public street therein. The terms of that agreement provided that the contractor should receive 65¢ per lineal foot for grading a specified distance of street surface. During the course of the work and when it had only been partially completed, it was found that part of the lineal footage which the contract required the contractor to grade was not owned by or in the control of the municipality. The latter thereupon interrupted the performance of the work and the contractor abandoned its further prosecution. At that point the contractor had received from the municipality the sum of $1,850 on account. The total length of the grading called for by the contract was 4,220 feet. At 65¢ per foot, the contractor would have become entitled, had he completed the total lineal footage, to the sum of $2,743. The length of the work performed by the contractor was 3,500 feet, and the performance of this work involved the making of 8,000 cubic yards of excavation and the placing of 1,300 cubic yards of fill. In order to complete the total contract it would have been necessary to place 14,000 cubic yards of fill. The contractor sued the Borough for breach of contract and upon *quantum meruit* for the work done. The evidence disclosed that the fair cost of the work done was $3,153.00 and that the fair cost of the work remaining undone was $1,891.00. Thus, the fair cost of the performance of the whole contract was $5,044.00 (albeit the bid on which

the contractor was awarded the work was $2,743.00). The New Jersey Supreme Court affirmed the non-suit of the plaintiff in the trial court, and in its opinion stated that the plaintiff could recover for the work done only such a proportion of the contract price as the fair cost of that work ($3,153.00) bore to the fair cost of the whole work required $5,044.00), and, in respect of the work not done, only such profit, if any, as the contractor might have made by completing the work for the unpaid balance of the contract price. An equation reflective of the foregoing rule would be X over 2,743 equals 3,153 over 5,044, equals $1,715. (for the work done). Because the evidence disclosed that it would have cost $1,891.00 to perform the work remaining undone, and the unpaid balance of the contract price was only $893.00 ($2,743 minus $1,850), the contractor could earn no profit by completing the contract. Therefore, said the Court, he was overpaid $1,850.00 minus $1,715. equalling $135.00. The Court's opinion continues in the following language: "[w]hen it can be determined what, according to the contract, the plaintiff would receive for that which he has done, and what profit he would have realized by doing that which, without fault, he has been prevented from doing, then these sums become the legal, as they are the just, measure of his damages." Plaintiff must show himself to have sustained damage, i. e. (1) that actual compensation will only be given for actual loss; and (2) that the contract itself furnishes the measure of damages. It is the rule in New Jersey that the contractor shall recover the cash value of what he was to receive (Hinchman v. Rutan, 31 N.J.L. 496) thus maintaining the standard fixed by the contract.

In the present case, if Beaver Valley had completed the work called for by the subcontract with Terminal, it would have been entitled to no more than $217,500, the price for which it contracted to perform the work. According to Beaver Valley's claims, the *cost* of the work which it *had* performed was $169,363.12.

Terminal's evidence tended to show that as of May 8, 1959, when Beaver Valley concedely left the job, it had performed 33% of the work called for by the subcontract (exclusive of corrective work), and that the reasonable value of the work so performed was $71,775.00. A written stipulation, dated April 5, 1962, signed by counsel, is on file, paragraph 12 of which reveals that certain payments on the contract were made by Terminal to Beaver Valley. Prior to May 11, 1959, the parties agreed that Terminal had made payments in the aggregate amount of $54,804.98. The parties further are in agreement that subsequent to May 11, 1959, Terminal made certain additional payments, Beaver Valley contending that they total $16,597.26 and Terminal contending that they total $16,603.26. The net amount which Terminal was compelled to pay to William Hartman, Incorporated (Hartman) to complete the painting work called for by Beaver Valley's subcontract, was $319,598.59 on a "cost plus" basis. The contract between Terminal and Hartman reads that the latter was to receive its cost comprised of its expenses for labor, materials, equipment, insurance and taxes, plus 2% for overhead, and 5% net profit, for performing the remaining 67% of the work which Beaver Valley had initially contracted to perform. It is apparent that the cost actually incurred by Hartman for completion of the job was considerably in excess of the $217,500 for which Beaver Valley had undertaken to perform the *entire* contract, and on account of which it had received $75,118.26.

The evidence in this case has failed to show that *IF* Beaver Valley had completed the work called for by its subcontract with Terminal, it would have made a profit. Neither is there any evidence in the case from which the cost to Beaver Valley of completing the contract can be calculated. Consequently, we are precluded from applying to this case the formula suggested in Kehoe because of the existence of more than one unknown quantity. Kehoe recognized, however, that circumstances may exist which make application of the formula for determining damages inapplicable, an example being that "if, the work being only partly done, that which is done, or that which is left undone, cannot be measured, so as to ascertain its price at the rate specified in the contract." Beaver Valley's subcontract was for a lump sum, no rate per hour, per day or per housing unit was prescribed therein. There is nothing in the evidence, therefore, from which we may determine with reasonable reliability, how much of the expense which Beaver Valley had incurred as of May 8, 1959 represented the cost of the work which it had performed to that date, or how much, if any, would be appropriately allocable to the completion of the work called for by the contract. The absence of evidence of cost factors precludes the calculation of the proportions employed by the Court in Kehoe to determine the quantum of damages to which the party suffering from the contract breach would be entitled where he had not completed the work required to be done under the contract. The Kehoe case, supra, has been cited with approval in Ryan v. Remmey, N.J.Sup.1895, 57 N.J.L. 474, 31 A. 766; Cavanagh v. Borough of Ridgefield, E. & A. 1920, 94 N.J.L. 147, 109 A. 515; Wilkinson v. Orange Mountain Land Co., E. & A. 1927, 103 N.J.L. 683, 137 A. 591; Goldman v. Shapiro, App. Div.1951, 16 N.J.Super. 324, 84 A.2d 628; DePonte v. Mutual Contracting Co., App.Div.1952, 18 N.J.Super. 142, 86 A.2d 785; Wilkins v. Bailey Engineering Co., Inc., App.Div.1952, 21 N.J.Super. 227, 91 A.2d 98; and Apex Metal Stamping Co. v. Alexander & Sawyer, Inc., App. Div.1958, 48 N.J.Super. 476, 138 A.2d 568.

United States v. Behan, 110 U.S. 338, 4 S.Ct. 81, 28 L.Ed. 168, supra, was an appeal from the United States Court of Claims. The claimant was a surety on the performance bond of one Roy, who had contracted with the United States Corps of Engineers to make certain improvements in the harbor of New Orleans. The Government contracting officer annulled the contract, and the sure-

ties on the contractor's bond were notified of their right to continue the contract work should they so desire. Surety Behan undertook the completion of the work and incurred substantial expense for machinery, materials and labor. The Corps of Engineers, having found that the plan for the improvement was a failure, without any fault on the part of the claimant, ordered a cessation of the work. Claimant stopped all operations, disposed of his machinery and materials for the best price obtainable and made claim against the War Department for his outlay and expenses, together with the value of his own time. Claimant alleged that he could have completed the work by a further expenditure in a stated amount which would have entitled him to a specified sum, which would have afforded him a profit in a stated figure. The Supreme Court affirmed the Court of Claims in awarding to the claimant an amount representing claimant's net cost for the work performed at the time the cessation was ordered. The opinion states, at p. 344, 4 S.Ct. at 83: "The *prima facie* measure of damages for the breach of a contract is the amount of the loss which the injured party has sustained thereby. If the breach consists in preventing the performance of the contract, without the fault of the other party, who is willing to perform it, the loss of the latter will consist of two distinct items or grounds of damage, namely: first, what he has already expended towards performance (less the value of materials on hand); secondly, the profits that he would realize by performing the whole contract. The second item, profits, cannot always be recovered. They may be too remote and speculative in their character, and therefore incapable of that clear and direct proof which the law requires. \* \* \* If not proved, or if they are of such a remote and speculative character that they cannot be legally proved, the party is confined to his loss of actual outlay and expense. This loss, however, he is clearly entitled to recover in all cases, unless the other party, who has volun-

tarily stopped the performance of the contract, can show the contrary." The jury in the case at bar was permitted to find (under the charge of the Court) that Beaver Valley was prevented from completing the performance of its subcontract through no fault of its own, and that the conduct of Terminal was responsible for Beaver Valley's inability to complete. The jury was also permitted to determine whether the evidence in the case afforded a basis for concluding that Beaver Valley was entitled to recover any damages in excess of actual outlay and expense. In Wilson v. Borden, E. & A. 1903, 68 N.J.L. 627, 54 A. 815, a building contractor sued the owner for work done under a contract, claiming that the owner unlawfully rescinded the contract, and was permitted in the trial court to recover the cost of the work done and materials furnished. The plaintiff had proved the cost of the work done and the defendant offered to prove what it would cost to finish the work called for by the contract. The appellate court held that the trial court erred in refusing this offer of proof, stating that "[t]o ascertain what portion of the work the plaintiff had done, it was necessary to ascertain what the cost of entire work would have been."

The Restatement of the Law of Contracts (1932 ed.) grants to one in plaintiff's position the choice of alternative methods of proving its damages. Section 346(2) states:

"§ 346. DAMAGES FOR BREACH OF A CONSTRUCTION CONTRACT.

\* \* \* \* \* \*

"(2) For a breach by one who has promised to pay for construction, if it is a partial breach the builder can get judgment for the instalment due, with interest; and if it is a total breach he can get judgment, with interest so far as permitted by the rules stated in § 337, for either

"(a) the entire contract price and compensation for unavoidable special harm that the defendant had

reason to foresee when the contract was made, less instalments already paid and the cost of completion that the builder can reasonably save by not completing the work; or

"(b) the amount of his expenditure in part performance of the contract, subject to the limitations stated in § 333."

The New Jersey annotations to this section reveal that the first method, that is, 346(2) (a), is followed in this State; they cite for this proposition the case of Kehoe v. Mayor, etc., of the Borough of Rutherford, supra. For the alternative method, 346(2) (b) no New Jersey cases are cited. However, as I read the method contained therein, it is apparent that the measure of damages is the same as that applied in Behan v. United States, supra. The choice of method to adopt in proving damages rests, of course, with the plaintiff. Section 333 of the Restatement, invoked by 346(2) (b) provides:

"§ 333. WHEN DAMAGES MAY BE MEASURED BY EXPENDITURES IN PART PERFORMANCE.

"The amount of the plaintiff's expenditure, reasonably made in performance of the contract or in necessary preparation therefor, is included in compensatory damages, with the following limitations:

"(a) Such expenditures are not recoverable in excess of the full contract price promised by the defendant.

"(b) Expenditures in preparation are not recoverable unless they can fairly be regarded as part of the cost of performance in estimating profit and loss.

"(c) Installments of the contract price already received and the value of materials on hand that would have been consumed in completion must be deducted.

"(d) If full performance would have resulted in a net loss to the plaintiff, the amount of this loss must be deducted, *the burden of proof being on the defendant*." (Emphasis supplied.)

The text cited states, with respect to the foregoing section that damages are recoverable for losses caused by the breach of a contract and for gains prevented by the breach:

"The expenditure incurred by the plaintiff prior to breach is normally reimbursed to him, when the defendant gives the promised compensation. Such expenditure, therefore, is included in any judgment for the full contract price less cost of completion, except to the extent that full performance would have resulted in a net loss. In cases where full performance would have resulted in a profit, the full contract price equals the plaintiff's total expenditure plus the amount of the profit; and the full contract price less the cost of completion equals the plaintiff's expenditure in part performance, plus the amount of the profit. A judgment for such expenditure, therefore, is a judgment for a portion of the value promised by the defendant, the receipt of which by plaintiff is prevented by the breach. * * * Frequently it is very difficult, and at times it is impossible, to prove the cost of completion and the amount of profit that would have resulted from full performance. It is in these cases that the rule of the present Section is essential to the plaintiff's case. Since in the usual case he is entitled to expenditure plus profits, his inability to prove profits should not deprive him of his right to the proved expenditure, so far as this expenditure was provident and reasonable and is not already compensated for in useable materials on hand. * * * The remedy of the present Section covers expenditures without any reference to value received, the outlay of the plaintiff without regard to the result of that outlay or its benefit to the defendant. * * *"

The jury here was entitled to find that by reason of the obligation which Beaver Valley had assumed under its pending subcontract, it was required to and did incur expense; and that Terminal benefited from the expense incurred by Beaver Valley to the extent of the portion of the contract work which Beaver Valley had performed when, as the jury apparently found, Beaver Valley was prevented by Terminal from further performance. The net effect of such findings, which are consistent with the jury's affirmative verdict in favor of Beaver Valley, was the recognition of a loss to Beaver Valley enuring to the benefit of Terminal. Implicit, if not expressed, in Terminal's present motions is the contention that, because of the absence of evidence from which it may be inferred that Beaver Valley would have made a profit if it had completed the contract work, no profit would have been made. The burden of proving that no such profit would have accrued to Beaver Valley upon full completion of the contract falls, under the provisions of § 333 of the Restatement, upon Terminal. The jury was justified in finding, upon the evidence adduced, that defendant had not discharged that burden.

To the facts in this case, as disclosed by the evidence, the Behan, rather than the Kehoe rule for the measurement of damages, is more appropriate. There was evidence from which the jury in the case at bar could have found that Beaver Valley appropriately incurred reasonable expense in performing the work which it did under the contract, in the amount of $169,363.12 against which amount Beaver Valley was obliged to credit payments received by it on account, as set forth in the stipulation to which reference is made above. The jury was not *required* to accept the asserted costs less the payments on account as Beaver Valley's net expense, and it apparently did not do so, but awarded only a portion thereof, to wit, the sum of $29,394.76. Terminal, therefore, cannot be heard to complain of an award less than that which the jury might have made against it under the evidence.

Terminal further contends, in support of its pending motions, that no cause of action as alleged in the complaint persisted in favor of Beaver Valley because, by written document dated April 30, 1950, marked Exhibit D–21, Beaver Valley, in consideration of an intermediate payment due on its subcontract with Terminal, released Terminal "from all manner of debts, sums of money, liens, claims, and demands of whatsoever kind, which it (Beaver Valley) now has or might have against it (Terminal) or against the said building and land by reason of the premises so that the owner of said premises and its successors and assigns shall be freed and discharged of said claims, and so that it shall and may hold and enjoy the said buildings and land freed and discharged from all liens, claims and demands whatsoever which the Releasor (Beaver Valley) now has or might or could have on or against the same, if these presents had not been made." Beaver Valley's president, Kazel, a witness in its behalf, testified, in response to a question by the Court, that this release was one required by Terminal from Beaver Valley as a condition precedent to the payment of the respective installments provided for in the contract, in accordance with printed paragraph 9 of the pending subcontract, which provided:

> "9. RELEASES: The Subcontractor shall furnish and execute, or cause to be executed, upon request and in any form designated by the Contractor, releases or receipts from all persons or firms performing work and supplying materials or services of any nature, to the Subcontractor, as well as releases from Subcontractor to Contractor."

The purpose and intent of the parties with respect to each of these releases against intermediate payments was submitted as a question of fact to the jury under the instructions of the Court. Each release related, by its terms, to a

separate intermediate payment and the acknowledgment of Kazel, who executed the release for Beaver Valley, expressly states that the release was made to induce Terminal to make the particular intermediate payment in accordance with the contract. The jury properly found that the breadth of the language embodied in each of the releases was not intended to discharge the general contractor from liability to the subcontractor for payments or damages due or accruing after the date of the particular release. The Court takes judicial notice of the provisions of the Capehart Housing Act relating to the necessity of preserving the priority of the mortgage liens to accrue upon the housing areas upon completion, as against mechanics liens under the law of the State of New Jersey or otherwise.

The Court in its charge instructed the jury, in part, as follows:

"There are before you in evidence in this case a series of written releases from Beaver Valley to Terminal Construction. One of these releases was executed in connection with and in consideration of each of the installment payments made by Terminal Construction to Beaver Valley under the contract in suit. Each of these releases purports to discharge Terminal Construction from liability to Beaver Valley for any cause up to the date of that release. Beaver Valley claims that it was compelled to execute each release in order to obtain each payment and that its financial need compelled it to do so. You may and should determine whether each release was the act of Beaver Valley, and whether the language of each release is consistent with such of Beaver Valley's present claims as are based upon what Terminal Construction did or did not do under the contract prior to the date of the release which you may be considering. Financial necessity of Beaver Valley would not constitute duress which would impair the effectiveness of its

release within the scope of the language of that document."

By returning a substantial verdict in favor of Beaver Valley, the jury necessarily found that each of these releases related only to the work done which entitled the releasor to the installment payment mentioned therein, and in compliance with the condition of the contract above quoted. Terminal's contention that these or any of these releases deprived Beaver Valley of the case of action alleged in the complaint in this case must be overruled.

The motions for judgment notwithstanding the verdict, and for a new trial, are accordingly denied. Plaintiff may submit an order in conformity with the views expressed in this opinion.