LAETZ *v.* TIERNEY.

1. LANDLORD AND TENANT—CHATTEL MORTGAGES—FORECLOSURE
   —DESTRUCTION OF BUSINESS—LIABILITY OF MORTGAGEE.
   Where a lease gave the landlord the right of re-entry in case
   of nonpayment of rent, and he also had a chattel mortgage
   on the stock and fixtures on the premises belonging to the
   tenant giving him the right on foreclosure to sell at private
   sale without notice, he was not liable to the tenant-mort-
   gagor for damages for destroying and breaking up his busi-
   ness where, the tenant being in default on both instruments,
   he went peaceably into the store and suggested that the ten-
   ant "give up the ghost," and on the tenant's declining to
   do so without the advice of counsel, and leaving the store to
   obtain such advice, he locked the door and retained posses-
   sion for the purpose of foreclosing.

2. APPEAL AND ERROR—REVERSAL—NOMINAL DAMAGES.
   A judgment for defendant will not be reversed where plaintiff
   could recover only nominal damages in any event.

Error to Bay; Collins, J. Submitted May 7, 1908.
(Docket No. 120.) Decided June 27, 1908.

Case by John G. Laetz against Peter Tierney and
Harry J. Tierney for an unlawful seizure of certain mort-
gaged property. There was judgment for defendants on
a verdict directed by the court, and plaintiff brings error.
Affirmed.

*George R. Fox* (*James Van Kleeck*, of counsel), for
appellant.

*Weadock & Duffy*, for appellees.

HOOKER, J. The plaintiff was a saloon keeper doing
business in a building leased by him from the defendant
Peter Tierney. The lease was in writing and contained a
covenant to pay rent and the following provision:

"Provided, that in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said party of the first part, his certain attorney, heirs, representatives and assigns, to re-enter into and repossess the said premises, and the said party of the second part and each and every other occupant to remove and put out."

The lease was dated August 5, 1905.

In May or June, 1906, the plaintiff executed and delivered to defendant a chattel mortgage to secure a debt of $200. It covered the following property:

"One National cash register, six pairs curtains, one kitchen stove, one gas stove, all gas fixtures, twelve chairs, three tables, one desk, all stocks of wines, whiskeys, beer, and other liquors of every kind and description, all glasses, two mirrors, about twelve artificial palms, one clock, and, in fact, all my personal property of every kind and description."

It contained stringent provisions as to taking possession and foreclosure, with the right to sell at private sale without notice.

Being in arrears both in the rent and the chattel mortgage debt, the defendant called at plaintiff's place of business and suggested that plaintiff "close up the business," or, as plaintiff testified:

"He says: 'You better give up the ghost.' I says, 'No, Harry, I don't want to give up; if got to close this place up I want to see legal advice first,' and I went out. He says, 'You can.' I went out, and while I was gone to get legal advice, it took me only half an hour, and not quite that even, the place was locked against me when I came back. Hyman Mitchell was in possession. I had a talk with the Tierneys after that about regaining possession. When I went out to get legal advice from an attorney, I went to Mr. King's office first in order to get the 'phone to call Mr. Fox; from there I went to Mr. Fox's office. I returned then directly with Mr. Fox. I made an attempt to try the door and it was barred. When I left there to get advice, I left the bartender, Mr. Hyman; he remained there until the time he was told to get out in the evening; he was in the building when Mr. Fox and I

came back and attempted to get in. I went home after that, and I got back and the whole place was locked up and I couldn't get in at all. I did not tell Mr. Hyman to leave or give up possession. After that Hyman Mitchell and the Tierneys, very likely, remained in possession. The business was closed. It remained closed until the sale, and it was opened again after that, after someone bought it on a private sale; they commenced to use the building I had rented."

This action was subsequently brought, plaintiff claiming damages against the defendants for breaking up and destroying his business by unlawful acts. The court directed a verdict for the defendants.

Plaintiff claims that the defendants seized and sold the property on the chattel mortgage, and took possession of the store wrongfully and withheld it from him. The undisputed proof shows that the defendants, being lawfully in the store, took possession of the chattel-mortgaged property, bolting the door for the purpose of taking an inventory, plaintiff's bartender remaining and aiding in taking an inventory until, that being done, he was told by the defendants that he would not be needed longer. The mortgage covered all the personal property belonging to plaintiff and after its seizure, which was rightful, there is nothing to indicate either an ability or desire by the plaintiff to continue the business. It is obvious that he had no right of recovery growing out of the seizure and sale of the property. Under the terms of the lease he had forfeited the right to the possession of the premises, and by his own express covenant the plaintiff had a right to reenter and put him out.

There was nothing in the nature of force in the entry, or in obtaining possession, although there was proof that plaintiff's lawyer afterwards demanded possession. The plaintiff bases his action on the claim that he had a right to possession, although his own contract shows that he had no such right and that defendant had such a right. The question was passed upon in, and the case is ruled by, our decision in the case of *Smith* v. *Building Ass'n*, 115

Mich. 346.  See, also, *Murphy* v. *McIntyre*, 152 Mich. 591.

Again, the court was correct in saying that no damages, beyond nominal damages, were proven in the case, even upon the plaintiff's theory, and this would not call for a reversal.  *Hickey* v. *Baird*, 9 Mich. 38; *Haven* v. *Manufacturing Co.*, 40 Mich. 286; *Lewis* v. *Railway Co.*, 56 Mich. 638; *Stevens* v. *Yale*, 113 Mich. 680; *Wilcox* v. *Morton*, 132 Mich. 64.

The judgment is affirmed.

OSTRANDER, MOORE, CARPENTER, and MCALVAY. JJ., concurred.