KOLTON v. NASSAR.

NASSAR v. KOLTON.

1. CONTRACTS—BREACH OF EXECUTORY CONTRACT—MEASURE OF DAMAGES.

The measure of damages for breach of an executory construction contract that was terminated by the property owners, if any damages were suffered, was the net difference in his favor between the unpaid balance of the contract price and the amount it would cost the contractor to finish performance had he been permitted to do so.

2. SAME—DAMAGES—EVIDENCE.

A construction contractor was not entitled to have issue of damages submitted to jury, where he did not prove the difference between the unpaid balance of the contract, breached by defendant owners, and the amount it would cost plaintiff to finish performance had be been permitted to do so, his opinion evidence on such issue being unacceptable, since it was not supported by testimony, and defendants proved definitely that cost of completion exceeded unpaid contract balance.

3. APPEAL AND ERROR—REVERSAL—NOMINAL DAMAGES—COSTS.

Reversal of directed verdict and judgment for defendant property owners who admittedly breached construction contract will not be made merely because plaintiff was entitled to nominal damages, but affirmance does not carry costs.

Appeal from Wayne; Murphy (Thomas J.), J. Submitted October 6, 1959. (Docket Nos. 7, 8, Calendar Nos. 47,903, 47,927.) Decided November 25, 1959.

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 9 Am Jur, Building and Construction Contracts § 151 et seq.
[3] 14 Am Jur, Costs §§ 15, 92, 105.

Action by Harry Kolton, doing business as Kolton General Contractor, against Al. H. Nassar and Wanda Nassar, doing business as Nassar Appliance, for sums claimed due on building contract upon which defendants stopped performance. Directed verdict and judgment for defendants. Plaintiff appeals.

Bill by Alec H. Nassar, Wanda Nassar and others against Harry Kolton, doing business as Kolton General Contractor, to discharge mechanics' liens and for other relief. Cross bill to liquidate and foreclose liens. Decree for plaintiffs. Defendant appeals.

Appeals consolidated. Affirmed.

*John T. McWilliams,* for plaintiff Kolton.

*David Polasky* and *Marvin A. Smith,* for defendants Nassar.

BLACK, J. Separate appeals, consolidated for presentation here, bring up for review a judgment and a decree which, in the above entitled law and chancery cases respectively, were entered against plaintiff-appellant Kolton. By stipulation it is agreed that the decision of this Court in the law case, either to affirm or reverse, shall govern disposition of the chancery case. Thus the law case only will receive consideration in the ensuing opinion.

Plaintiff's suit against defendants, for damages arising from breach by defendants of the presently summarized building contract, was tried to a jury. The trial judge, holding that plaintiff had failed to prove damages as alleged, directed a verdict for defendants. Upon such verdict, judgment for defendants was entered. Plaintiff's appeal from such judgment poses this decisive question: Where the

defendants without cause have stopped performance of an executory contract between the parties and so are guilty of breach, "may the Court, nevertheless, direct a verdict against plaintiff and refuse to let the jury assess plaintiff's damages?"

January 25, 1954, plaintiff Kolton, as contractor, and defendants Al. H. Nassar and Wanda Nassar, as owners, entered into a written contract for construction of an addition to defendants' store building in Dearborn. The contract price was $41,000, payable according to the schedule* shown in the margin. Work was started, and progress thereof continued until August 24, 1954, whereupon the defendant owners stopped performance. At that time defendants had paid plaintiff a total of $21,500. Plaintiff claims and defendants deny that progress payments aggregating $13,500 were then due plaintiff. Whatever the fact in that regard it was adjudged below, and no party complains of the ruling, that defendants actionably breached the contract by such stoppage of performance. This left but one question at close of the proofs, namely, whether plaintiff had suffered and proven any damage arising from the breach. The trial judge held there was no such proof.

Plaintiff's measure of damage, if any was suffered, was the net difference in his favor between the unpaid balance of the contract price and the amount it would cost plaintiff to finish performance had he been permitted to do so (*Walton School of Commerce* v. *Stroud,* 248 Mich 85; *Mount Ida School for Girls* v. *Rood,* 253 Mich 482 [74 ALR 1325]). Plaintiff did not choose to prove such difference, despite

* The contract called for a down payment of $1,000; $3,500 "when footings are in;" $7,500 "when blocks are one-half up;" $7,500 "when the block work is done;" $1,000 "when the rough plumbing is in;" $2,000 "when steel is ordered;" $6,500 "when steel is delivered and installed;" $6,000 "when roof is on," and $6,000 "when job is completed."

urging by the trial judge. He sought to prove loss of profits arising from defendants' breach by means of opinion evidence, unsupported by testimonially established facts. The trial judge refused to receive the proffered opinion evidence, it being his repeatedly declared view that plaintiff could and should prove the cost of completing the contracted construction job. Defendants, presenting their case, proved definitely that such cost of completion was in excess of the unpaid contract balance. The conclusion is thus inescapable, as held by the trial judge, that plaintiff derived a benefit rather than a detriment from defendants' termination of performance. The trial judge, in the course of instruction that the jury should return a verdict for defendants, said this— and we agree:

"The undisputed testimony is that it would have cost him [plaintiff] more to finish the building than he had coming, $5,000 more. It would cost at least $46,000 for the building, and he agreed to build it for $41,000. So he got out of a bad contract. He did not lose anything. If anything he made some money, because he would have had to spend $5,000 more than the contract price to finish it."

Plaintiff has asked that we specially examine the following cases, alleging that they support his contention that the question of amount of damages should have been submitted to the jury: *Crawford* v. *McKinney,* 165 Pa 609 (30 A 1047); *Milske* v. *Steiner Mantel Co.,* 103 Md 235 (63 A 471, 5 LRA NS 1105, 115 Am St Rep 354); *Carras* v. *Birge* (Tex Civ App), 211 SW2d 998; *Tripp* v. *Henderson,* 158 Fla 442 (28 So2d 857); *DePonte* v. *Mutual Contracting Co.,* 18 NJ Super 142 (86 A2d 785); *Atlas Floor Covering* v. *Crescent House & Garden, Inc.,* 166 Cal App2d 211 (333 P2d 194); and *Standard Iron Works* v. *Globe Jewelry & Loan, Inc.,* 164 Cal App2d 108 (330 P2d 271). We have done so and find nothing

in any one of them which tends to conflict with the conclusion reached above.

It is true that plaintiff became entitled to nominal damages on account of defendants' breach (12 Am Jur, Contracts, § 388, pp 964, 965; 1 Restatement, Contracts, § 328, pp 502, 503*) and that the trial judge thus erred—technically—in directing a verdict for defendants. However, we do not reverse for such reason. See *Vachon* v. *Todorovich*, 356 Mich 182, 188, and cases assembled in *Laetz* v. *Tierney*, 153 Mich 279, 282.

We would affirm, without an award of costs.

DETHMERS, C. J., and CARR, KELLY, SMITH, EDWARDS, VOELKER, and KAVANAGH, JJ., concurred.

---

* Said section 328 of Restatement, headed "Nominal Damages," carries the following presently applicable "Comment":

"a. A breach of contract always creates a right of action; but a breach sometimes occurs without causing any harm. In other cases the breach may cause extensive harm, but the plaintiff either cannot or does not establish a right to substantial compensation therefor as the rules stated in this chapter require. In all these cases the plaintiff can get judgment for nominal damages. The exact amount is fixed by statute or by custom of the jurisdiction where the action is brought. Where substantial injury is proved and a judgment for compensatory damages is given therefor, there is no right to nominal damages in addition.

"b. In some jurisdictions the appellate courts may refuse to reverse an erroneous judgment if the only purpose of such reversal is to award nominal damages."