### JOHN KEHOE v. THE MAYOR AND COUNCIL OF THE BOROUGH OF RUTHERFORD.

When, under a valid contract to perform a specified work for a specified price, the plaintiff has done part and has been prevented from performing completely through the fault of the defendant, the legal measure of the plaintiff's damages is generally, for the work done,

such a proportion of the entire price as the fair cost of that work bears to the fair cost of the whole work, and, in respect to the work not done, such profits as he would have realized by doing it.

---

On rule to show cause why a new trial should not be granted.

Argued at June Term, 1893, before BEASLEY, CHIEF JUSTICE, and Justices DIXON, MAGIE and GARRISON.

For the plaintiff, *Addison Ely* and *Stephen B. Ransom.*

For the defendant, *Edward J. Luce.*

The opinion of the court was delivered by

DIXON, J. On October 15th, 1888, the plaintiff and defendant entered into a written contract, under seal, by which the plaintiff became bound to grade, work, shape, level, smooth and roll Montrose avenue, in the borough of Rutherford, to its entire width, according to the established grade, commencing at Washington avenue and ending at Pierpont avenue, and the defendant became bound to pay him therefor sixty-five cents per lineal or running foot.

Soon afterwards the plaintiff began the work, and continued until it was discovered that some of the land to be graded under the contract was private property. Then, being forbidden by the owners to enter upon this property, the plaintiff stopped the work by direction of the borough authorities and concluded to abandon it. In the meantime he had been paid $1,850 of the contract price.

On this state of facts he brought suit against the defendant, relying, in one count of his declaration, upon the breach of the special contract, and in another on the *quantum meruit* for the work done.

At the trial in the Bergen Circuit, the plaintiff's evidence tended to prove that the length of the whole work required by the contract was four thousand two hundred and twenty

feet, which, at the contract rate, sixty-five cents per lineal foot, made the aggregate price $2,743; that about three thousand five hundred feet in length had been substantially graded, but still needed trimming up and finishing; that in doing this work he had excavated about eight thousand cubic yards of earth and had put in about one thousand three hundred cubic yards of filling; that, to complete the job, about fourteen thousand cubic yards of filling were still necessary, besides the trimming up and finishing of the entire length of the street. His evidence further indicated that the fair cost of the work done was—

| | |
|---|---:|
| 8,000 cubic yards of excavation, at 35 cents | $2,800 |
| 900 cubic yards of filling, at 21 cents | 189 |
| 400 cubic yards of filling, at 41 cents | 164 |
| Making a total of | $3,153 |

And that the fair cost of the work remaining to be done in completely performing the contract was—

| | |
|---|---:|
| 14,000 cubic yards of filling, at 12 cents | $1,680 |
| 4,220 feet of finishing, at 5 cents | 211 |
| Making a total of | $1,891 |

Thus showing the fair cost of the whole work required by the contract to be $5,044.

These calculations are, in every instance, based upon the testimony most favorable to the plaintiff, allowing him the highest estimates for what he had done, and reckoning the residue at the lowest. If his own estimates or those of any single witness were taken throughout, the result would be more to his disadvantage.

Upon the evidence thus presented, the plaintiff was non-suited and a rule allowed that the defendant show cause why a new trial should not be awarded.

The nonsuit was ordered upon the theory that the plaintiff could recover, for the work done, only such a proportion of

the contract price as the fair cost of that work bore to the fair cost of the whole work required, and, in respect of the work not done, only such profit (if any) as he might have made by doing it for the unpaid balance of the contract price. Under this theory, his recovery for the work done was to be limited to such a proportion of $2,743 as three thousand one hundred and fifty-three bears to five thousand and forty-four, viz., $1,715; and as to the work not done, since it would cost him $1,891 to do it, while the unpaid balance of the price was only $893, no profit could be earned by doing it. Hence it was considered that he had been overpaid to the extent of the difference between $1,850 and $1,715.

But the contention of the plaintiff was and is that, as he was prevented from completing the contract without fault on his part, he is entitled to the reasonable value of the work done, without reference to the contract price; and if this be the correct rule, undoubtedly the case should have gone to the jury. But at the very threshold we are confronted with this possible result of the application of the rule contended for, that the plaintiff might recover $3,153 for doing about three-fifths of the work, while if he had done it all he could have recovered only $2,743. The absurdity of the result condemns the application of such a rule.

Circumstances may exist in which, for work done under a special contract, the plaintiff will recover its fair value. Thus, if the contract be within the prohibition of the statute of frauds (*McElroy* v. *Ludlum*, 5 *Stew. Eq.* 828), or if, the work being only partly done, that which is done or that which is left undone cannot be measured so as to ascertain its price at the rate specified in the contract (*Derby* v. *Johnson*, 21 *Vt.* 17), or, in the absence of evidence to the contrary, it may be assumed that the rate specified is a reasonable one. *United States* v. *Behan,* 110 *U. S.* 338.

But generally, when it can be determined what, according to the contract, the plaintiff would receive for that which he has done and what profit he would have realized by doing that which, without fault, he has been prevented from doing,

then these sums become the legal, as they are the just, measure of his damages. He is to lose nothing, but, on the other hand, he is to gain nothing, by the breach of the contract, except as the abrogation of a losing bargain may save him from additional loss.

This is the rule applied in the case of *Masterton* v. *Mayor, &c., of Brooklyn*, 7 *Hill* 61, where the plaintiff was to receive $271,600 for eighty-eight thousand eight hundred and nineteen feet of marble, and after he had delivered fourteen thousand seven hundred and seventy-nine feet, the defendant stopped him. He was awarded the contract price for the fourteen thousand seven hundred and seventy-nine feet, and the profit which he would have made by delivering the balance. The same principle was declared by this court in *Boyd* v. *Meighan*, 19 *Vroom* 404, and accords with the fundamental doctrines laid down by Mr. Sedgwick (1 *Sedgw. Dam.* [200] 432)—first, that the plaintiff must show himself to have sustained damage, or, in other words, that actual compensation will only be given for actual loss ; and, second, that the contract itself furnishes the measure of damages.

Sometimes it has been held that if the contract binds the defendant to pay otherwise than in money, and he refuses, then the plaintiff may recover the cash value of what he has done or delivered (*Ankeny* v. *Clark*, 148 *U. S.* 345) ; but in New Jersey the rule is that he shall recover the cash value of what he was to receive (*Hinchman* v. *Rutan*, 2 *Vroom* 496), thus maintaining the standard fixed by the contract.

Some of the obscurity surrounding this subject springs, I think, from a failure to distinguish between the right to sue upon the *quantum meruit* when the contract remains uncompleted through the fault of the defendant and the measure of damages in such a state of facts. It is well settled that, if the plaintiff has fully performed his contract, so that nothing remains but the duty of the defendant to pay, the plaintiff may declare upon the *quantum meruit*, ignoring the special contract, and the plaintiff's readiness and offer to perform are to this extent—but to this extent only (*Shannon* v. *Comstock*,

21 *Wend.* 457)—equivalent to actual performance. In both cases, however, the amount which the plaintiff deserves to recover is regulated by the contract. The refusal of the defendant to pay after all the work is done is no less a breach of the contract than is his refusal to permit the plaintiff to do all that the bargain entitled him to do; but neither breach does or ought to put the parties in the position they would have occupied if no contract had been made. In both cases, what is done was done under the contract and should be paid for accordingly.

If, on partial performance, the plaintiff confines himself to the common counts, he excludes, by his pleading, any claim for what he has not performed, but he does not thereby enhance his deserts for what he has performed, and therefore, in order to obtain complete justice on breach of a profitable bargain, he must resort to a special count.

Our conclusion is that, as the plaintiff had been paid up to the full measure of the contract for the work done, and could have made no profit by its further prosecution, the nonsuit was substantially right.

The rule to show cause is discharged.