18 N.J. Super. 142 (1952)
86 A.2d 785
ANTHONY DE PONTE, PLAINTIFF-RESPONDENT,
v.
MUTUAL CONTRACTING COMPANY, INC., A CORPORATION OF NEW JERSEY, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 4, 1952.
Decided February 13, 1952.
*144 Before Judges JACOBS, EASTWOOD and BIGELOW.
Mr. Howard K. Stokes argued the cause for the plaintiff-respondent (Messrs. Wise & Wise, attorneys).
*145 Mr. Benjamin I. Kantor argued the cause for the defendant-appellant (Messrs. Karkus & Kantor, attorneys).
The opinion of the court was delivered by EASTWOOD, J.A.D.
This litigation is based upon two causes of action: (1) the plaintiff's suit for damages allegedly arising out of breach of a written contract between the parties for the installation of concrete curbs and sidewalks at Red Bank, New Jersey; and (2) the defendant's counterclaim for mixed cement sold and delivered by the defendant to the plaintiff. The trial resulted in a verdict by the jury in favor of the plaintiff on his action in the sum of $2,059 and no cause of action in favor of the plaintiff and against the defendant on defendant's counterclaim. On the application by defendant for a new trial, the court concluded that the verdict was excessive to the extent of $559 and, with the plaintiff's consent, reduced it to $1,500, and refused to disturb the verdict of no cause of action on the counterclaim. The defendant appeals from the ensuing judgment.
The agreed price for the installation of the concrete curbs and sidewalks was the sum of $5,224. The plaintiff testified that he was ready and willing to proceed with the undertaking and when he attempted to do so, Mr. Steffer, president of the defendant company, stopped him, stating that the defendant intended to do the work. The president of the defendant company denied that he had refused to permit the plaintiff to proceed with the work, and stated that by reason of plaintiff's inability to complete another job for the defendant at New Egypt, New Jersey, he found himself unable to proceed with the Red Bank job and, therefore, he was giving it up. To establish his damages, the plaintiff testified, without objection, as to the various items entering into the cost of the Red Bank job, amounting to the sum of $3,165, and the difference between the cost of performance and the contract price of $5,224, amounting to $2,059, represented his loss of profits or damages.
*146 The defendant contends that the judgment should be set aside on the grounds: (1) the court erred in refusing to grant the defendant's motion for judgment of dismissal at the conclusion of the entire trial; (2) that the verdict is against the weight of the evidence; (3) that the court, in its charge, "misled the jury"; (4) in refusing to charge one of defendant's requests; and (5) that the verdict of no cause of action on the counterclaim is against the weight of the evidence.
In considering the defendant's motion for judgment of dismissal, the court must necessarily accept as true all evidence which supports the view of the party against whom the motion is made and must give him the benefit of all legitimate inferences that may be drawn therefrom in his favor. McKinney v. Public Service Interstate Transp. Co., 4 N.J. 229 (1950). And, where fairminded men might honestly differ as to the conclusions to be drawn from the facts, whether controverted or uncontroverted, the question at issue should be submitted to the jury. Antonio v. Edwards, 5 N.J. 48 (1950). Insofar as the proofs as to whether the contract was breached and, if so, what were the plaintiff's damages, they are unquestionably contradictory.
It being readily discernible that the evidence regarding the termination of the Red Bank contract is sharply controverted, the court properly left that issue to the jury for its resolution. Antonio v. Edwards, supra.
As to plaintiff's damages, he testified in detail as to the various items representing the cost to the contractor for the performance of the work, totalling $3,165. The president of the defendant corporation testified that he suffered an actual loss of about $600 in the undertaking, although it does not appear that the defendant introduced its records to show whether a profit or loss was made. In addition, the defendant contends that the plaintiff, in proving the cost of performance, omitted several items which would have reduced his anticipated profit. This conflicting testimony clearly raised a factual issue for the determination of the jury.
*147 The defendant strenuously argues that the plaintiff's testimony as to the cost of performance was merely an estimate and, therefore, did not constitute competent proof of damages justifying submission of that issue to the jury, citing Wolcott, Johnson & Co. v. Mount, 36 N.J.L. 262 (Sup. Ct. 1873); Iuliucci v. Rice, 130 N.J.L. 271 (E. & A. 1943); Van Dusen Aircraft Supplies, Inc., v. Terminal Const. Corp., 3 N.J. 321 (1949), in support of its contention. In the Wolcott case, dealing with sale of inferior seed, the court held that not profits because of uncertainty of several factors, but the "difference between the market value of the crop raised, and the same crop from the seed ordered, would be the criterion of the extent of the loss." In the Iuliucci case, also an action based upon delivery of seed different from the kind ordered, followed the rule of the Wolcott case, but held that: "In the instant case such proof by way of comparison to support an inference was lacking." In the Van Dusen case, the action dealt with a suit charging the contractor with failure to build the foundation of a building as contracted for and sought damages occasioned by that breach and for loss of profit due to the resulting delay in making use of the building. It will be seen that these cases differ factually from the case before us for review and, therefore, have no pertinency. Here, the plaintiff, a mason contractor, had been in business for himself for three years, and 35 years with his father. No objection was made by the defendant to plaintiff's qualifications nor to his testimony to establish the amount of his damages nor to the court's charge concerning the calculation thereof. As a matter of fact, in view of the plaintiff's experience as a contractor, having ascertained the factors entering into the performance of the contract, having submitted an offer, accepted by the defendant for the performance of the job, his testimony was competent. As to its credibility and probative value, they were jury questions. The rule applicable here is settled that "* * * generally, when it can be determined what, according to the contract, the plaintiff would receive for that *148 which he has done, and what profit he would have realized by doing that which, without fault, he has been prevented from doing, then these sums become the legal, as they are the just, measure of his damages." Kehoe v. Rutherford, 56 N.J.L. 23, 26, 27 (Sup. Ct. 1893). See also Boyd v. Meighan, 48 N.J.L. 404 (Sup. Ct. 1886); Sullivan v. Magnolia Construction Co., 96 N.J.L. 214 (E. & A. 1921); Alexander Hamilton Institute v. Caulkins, 112 N.J.L. 170 (Sup. Ct. 1934); 5 Williston on Contracts (Rev. ed.), sec. 1346A (1), "Damages for Breach of Contract," p. 3781; Restatement of Law of Contracts, sec. 331, p. 515, and cases cited under New Jersey Annotations, Restatement of the Law of Contracts, sec. 329, p. 174. We are satisfied that there was competent evidence to support the jury's finding that there was a breach of the contract and determining the damages.
We are convinced that the jury's verdict of no cause of action on the defendant's counterclaim was the result of a mistake and should be set aside. See Nusser v. United Parcel Service of N.Y., Inc., 3 N.J. Super. 64 (App. Div. 1949); Kahn v. King Petroleum Corp., 13 N.J. Super. 334 (App. Div. 1951). The defendant's counterclaim, as originally asserted, was for the sum of $4,400. Subsequently, the defendant voluntarily reduced its demand to the sum of $1,905.67, the difference of $2,494.33 representing a net credit to which plaintiff was entitled on a job at New Egypt. While neither the pleadings nor the pretrail order raised any issue as to profits due by the defendant to the plaintiff for that job, it received consideration at the trial because of the defendant's voluntary action in giving credit to the plaintiff for the sum of $2,494.33, for his profit thereon. This situation obviously prompted the plaintiff to introduce the testimony of Mr. Larrabee, a professional engineer, to establish that the plaintiff was entitled to an additional credit of $1,215.49. The appellant argues that "thus it is clear that plaintiff owed at least the difference between $1,905.67, the amount claimed, and $1,215.49, the additional *149 credit sought, or $690.18." The record indicates that the plaintiff did not seriously dispute his indebtedness to the defendant in at least the sum of $690.18. In fact, the plaintiff took no exception to that part of the court's charge wherein it stated: "That is what we have in our mathematical calculations on the counterclaimant's side. That is the extreme end. You may determine that he owes them somewhere between $1,905.67 and $690.18." Therefore, under the circumstances, we direct a new trial on the issues raised by the counterclaim.
There is no merit in defendant's remaining grounds of appeal.
The judgment for $1,500 of the plaintiff on his cause of action is affirmed and the judgment of no cause of action on the defendant's counterclaim is reversed, without costs to either party.