34 N.J. Super. 54 (1955)
111 A.2d 443
WILLIAM E. BORBONUS AND GEORGIA BORBONUS, HIS WIFE, PLAINTIFFS,
v.
MAUD DAOUD, INDIVIDUALLY AND AS SURVIVING PARTNER OF THE PARTNERSHIP OF GEORGE J. DAOUD (DECEASED) AND MAUD DAOUD, TRADING AS DAOUD BROTHERS, DEFENDANTS.
Superior Court of New Jersey, Chancery Division.
Decided January 20, 1955.
*56 Mr. David H. Schantz, for plaintiffs (Messrs. Schantz & Tropp, attorneys).
Mr. Saul W. Arkus, for defendants (Messrs. Backer & Arkus, attorneys).
HANEMAN, J.S.C.
Plaintiffs herein originally brought suit for the rescission of a contract for the purchase of a diamond ring, or in the alternative, damages for the breach of a warranty in connection with said purchase. At the time of trial, plaintiffs abandoned their demand for rescission and restricted the relief demanded to damages for said alleged breach of warranty.
The facts in connection herewith are as follows: Plaintiffs had, over a period of time, transacted a considerable amount of business with the defendant Maud Daoud, a dealer in precious stones and objects of art, both in the form of loans made to and jewelry purchased from her. On or about February 3, 1952 the plaintiffs were staying at the Hotel Savoy Plaza in New York City as the guests of defendant Maud Daoud. At that time the defendant was indebted to the plaintiffs in the sum of $25,000 and while there they advanced to her an additional $25,000. On February 5, 1952, just prior to the plaintiffs' return to their home in Ocean City, New Jersey, while in the defendant's suite at the Hotel Savoy Plaza in New York City, they had exhibited to them by her one pear-shaped diamond ring. The plaintiffs had had considerable experience in the purchase of diamonds, as was demonstrated not only by the jewelry which was traded in on account of this purchase, but by various other items of jewelry which they had from time to time deposited with the defendant on consignment for sale.
Plaintiffs contend that the defendant stated that the diamond in question was "perfect and flawless in every respect," *57 and of the weight of 15 carats. The defendant denies the statement of perfection and absence of flaw. This alleged statement becomes important by reason of the facts hereinafter set forth, and the connotation given such a statement in the diamond trade. In that trade, the three elements which are considered in grading a diamond are: (1) the color of the stone, (2) the make, manufacture or cut of the stone, and (3) the perfection of the stone itself. A stone which is perfect in all three of these respects is denominated a gem. Plaintiffs contend, in effect, that what the defendant warranted was that the diamond was a gem, i.e., perfect in color, perfect in make, and without any flaw whatsoever. Although it is admitted that the diamond in question was of an excellent blue-white color and of a good make and manufacture, there did exist a flaw or imperfection in the stone, consisting of a small carbon spot discoverable by the use of a 7- or 8-power loop and not normally visible to the naked eye. The flaw in the stone was such as was classed in the trade as "v.v.s.," meaning very, very slight. The presence of this flaw prevented the diamond from being classed a perfect stone.
Within three hours after the ring had first been shown to the plaintiffs they had consummated the sale, had the ring sent out to a jeweler to be "sized" to fit the finger of Georgia Borbonus, and left for Ocean City.
The stone here in question was purchased by the defendant from Harry Winston, Inc., one of the largest dealers in diamonds of this kind in the world. Although the stone had been consigned to the defendant and several other dealers or retailers for sale at $60,000 some time prior to February 1952, on or about February 1, 1952 the sale price had been reduced to $55,000. On February 5, 1952 the price was again reduced, at defendant's request, to $53,000, at which price it was sold to her, less a discount of 5%.
In considering this price and the testimony of the experts, hereafter alluded to, it must be remembered that the wholesale price is the price charged by the dealer to a retailer and *58 is free of any federal tax, and that the retail price is that charged by the ordinary retail jeweler to the public, and was, at the time of the sale here involved, subject to a tax of 20%.
The testimony of the plaintiffs and that of the defendant in connection with the alleged warranty is sharply at odds. The defendant and her witnesses deny the making of any such warranty as the plaintiffs allege. The testimony of the two plaintiffs is also in some conflict. Georgia Borbonus testified that the defendant advised her that the sale was being made at the defendant's wholesale cost, i.e., $52,000 plus the federal tax, or a total of $58,000. William E. Borbonus, on the other hand, testified that at the same time and in the same conversation referred to by his wife, defendant said that her wholesale cost was $58,000 and it was at this price that she was selling the ring to the plaintiffs, without tax. I am satisfied that the plaintiff Georgia Borbonus' recollection is the correct one, especially in the light of the price for which defendant purchased the ring, and of the testimony of the defendant and her witnesses that she represented that she was selling the ring at her actual wholesale cost, plus tax. Although it might seem doubtful that the defendant would have consummated such a transaction at a price upon which simple arithmetic would seem to demonstrate that she sustained a loss, a more or less intimate knowledge of the manner in which these merchants transact their business would demonstrate that such a transaction was not unusual or peculiar.
It is always difficult, at best, to determine who of opposing witnesses is telling the tuth where there is such a complete conflict in the testimony as is here present. However, the truth may be ascertained by considering related and cognate statements and facts.
Both the plaintiff Georgia Borbonus and the defendant Maud Daoud agreed that Maud Daoud offered to sell the plaintiffs the ring here involved at her actual cost, plus tax, and that such cost was $52,000 or $53,000, or a total of $58,000. There can be no doubt that she did sell the ring at *59 her actual cost and added thereto a sum for the tax. It must be remembered that these plaintiffs, although they were not diamond experts, had had considerable dealings in diamonds and precious stones, involving one additional stone worth at least $48,000. They were not ignorant or inexperienced buyers. As such, they must have known, as one of their experts testified, that stones of similar weight and quality to that with which we are here concerned were very rare, there being only one or two in the entire market, and a far less number of "perfect and flawless stones." It seems odd that with this experience and their knowledge of the connotation to be accorded the words "perfect and flawless," which expression they ofttimes repeated in their testimony, and the rarity of such stones on the market, that the plaintiffs took only two to three hours from the first showing of the diamond to the completion of the purchase. During this time they neither sought nor obtained any independent opinion or appraisal, nor did they obtain any written statement of the alleged warranty.
I find, therefore, that the defendant was not guilty of any false affirmation of the fact relating to the diamond, the natural tendency of which was to induce the plaintiffs to purchase the stone, and that the plaintiffs did not rely on any such alleged warranty.
In any event, even though there was such a breach of warranty, I find that any such breach was injuria absque damnum.
The plaintiffs' experts were at some variance as to the actual value of the stone. One Davis, an expert called by the plaintiffs, testified that the retail value of the stone here in question was $36,731 plus tax, and that the wholesale value was $24,488. Plaintiffs' second expert, one Murray, testified that the retail value was $41,000 plus tax, and the wholesale value somewhere between $26,000 and $27,000. Although plaintiffs' experts admitted that they would be hard-pressed to find two stones of similar weight in the entire New York diamond market, and defendant's witness Raticoff, an employee *60 of Harry Winston, Inc., opined that he might be able to find as many as four similar stones, the plaintiffs' experts stated that there was a set fixed and recognized per carat market value. Diamonds vary greatly, not only as to color and make, cut or manufacture, but also as to degree of perfection. It is difficult to conclude that there would be an actual fixed per carat market value for any one stone of the weight here involved. It is conceivable that there would be a market value in diamonds of less weight where there is a great number of comparable stones available on the market, but it is hardly possible that a stone of the type here involved, which was more or less singular and unusual, would have a uniform per carat market value. The price for such an unusual article would be more or less governed by the law of supply and demand. I am disposed to agree with the witness Raticoff, the employee of Harry Winston, Inc., who in effect testified that for diamonds of the weight here involved there was no recognized per carat market value, and that they were sold "at what the traffic would bear." The test of this statement is found in the various prices at which Harry Winston, Inc. listed this particular stone for sale, i.e., $60,000, $55,000 and $53,000.
In Zeliff v. Sabatino, 15 N.J. 70 (1954), the court held that in some actions grounded in fraud or deceit a plaintiff may be entitled to "out-of-pocket" damages as just and adequate compensation, while in other cases, a plaintiff may be entitled to "benefit-of-the-bargain" damages as just and adequate compensation.
The measure of the "out-of-pocket" rule of damages is the difference between the price paid and the actual value of the property acquired. The measure of the "benefit-of-the-bargain" rule of damages is the difference between the price paid and the value of the property had the representations been true. No rule of damages capable of precise application in all cases can be laid down and followed. The proper and just method varies with the facts of the particular case. In cases of fraud, all damages which are the *61 proximate result of the wrong should be awarded. Zeliff v. Sabatino, supra.
"Generally, the recoverable damage for a breach of contract is the loss directly and naturally ensuing from the breach in the ordinary course of events. It comprises such losses as would probably result in the ordinary course of things from a breach of the contract under the special circumstances known to the parties at the time it was made." Louis Schlesinger Co. v. Rice, 4 N.J. 169 (1950).
There must always be a reasonably accurate and fair basis for the computation of alleged lost profits. Rempfer v. Deerfield Packing Corp., 4 N.J. 135 (1950). Compensatory damages for the breach of a contract must be such as would arise naturally as a result of the fault of a defendant and must be such as may be fairly and reasonably supposed to have been in the contemplation of the parties at the time that the contract was made. Damages which are remote, speculative and problematical cannot be recovered. Kurtz v. Oremland, 29 N.J. Super. 585 (Ch. 1954), affirmed opinion below, 16 N.J. 454 (1954).
Applying the above rules to the evidence as adduced, I find that the proper method of computing the damages sustained by the plaintiffs, had they borne the burden of proving the alleged breach of warranty, would have been the "out-of-pocket" damages. The loss, if any, would have been in this amount. There were no other special circumstances here present which would have raised any inference that any other damages would either naturally result from a breach of the contract or would have been in contemplation of the parties at the time of the making of the contract.
There is no dispute that the defendant paid $53,000 for the diamond, and I am satisfied from an evaluation of the testimony of the experts that this was, under the circumstances, a reasonable price.
I find that the retail price paid by the plaintiffs was not only not greater than the actual value of the diamond, but upon an accurate computation of the tax due, was less than a normal reasonable retail price and value thereof.
*62 Therefore, the plaintiffs have, in any event, failed to prove any "out-of-pocket" loss, which would have been the proper measure of damage had they succeeded on their primary obligation to prove a breach of warranty.
Judgment will be entered accordingly.