263 N.J. Super. 264 (1993)
622 A.2d 923
J.L. DAVIS & ASSOCIATES, T/A DAVIS HOUSE MOVERS, PLAINTIFF-RESPONDENT,
v.
CHARLES L. HEIDLER AND MARVEL B. JUCKETT, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Submitted February 9, 1993.
Decided March 30, 1993.
*267 Before Judges MICHELS, BILDER and BAIME.
Ballen and Gertel, attorneys for appellants (Leonard J. Bystrick, of counsel and on the brief).
Harold S. Vogel, attorney for respondent.
The opinion of the court was delivered by MICHELS, P.J.A.D.
Defendants Charles L. Heidler (Heidler) and Marvel B. Juckett (Juckett) appeal from a judgment of the Law Division that awarded plaintiff J.L. Davis & Associates, t/a Davis House Movers (Davis) damages in the total sum of $19,100.
Briefly, in July 1987, Davis and defendants entered into a contract to move a house located in Wildwood, New Jersey, owned by Juckett. The two-story house sat on pilings over the water and had to be moved because the pilings were deteriorating. Apparently, Juckett was under a court order to remove the house as the municipality wanted to build a temporary bridge and the construction could damage the house. After discussing the project with Heidler, the general contractor, Davis prepared two handwritten contracts which he signed and gave to Heidler for review by Juckett. The contract price was $12,500 to be paid in installments. Specifically, $500 was to be paid upon signing the contract, $2,000 upon arrival on the job site with the equipment, $4,000 when the building had been raised and ready for moving, $3,000 when the building was moved to the street and the final $3,000 when the building was replaced on the new pilings. In August 1987, Davis received *268 the signed contract and check for $500.00. The contract provided, in pertinent part, that:
4. The owner agrees to pay for all costs of permits, bonds, police and fire escort, removal of wires, trees and other obstructions before the building is scheduled to move.
* * * * * * * *
9. It is understood and agree[d] that the owner will complete the necessary work so that the contractor's equipment can be removed within 30 days after the building has been moved to the new site, and upon failure to do so, an equipment rental charge of $50.00 per day shall be paid for by the owner until such work has been performed, so that the equipment can be removed.
* * * * * * * *
12. It is further agreed that if the owner should find it necessary to cancel this agreement prior or during the performance of the work by the contractor, then and in case of such event, the owner agrees to reimburse the contractor for all costs incurred up to the time of such canceling plus overhead charges and profit. Not to exceed $500.00 if cancel within 30 days.
* * * * * * * *
14. Start of job end of Oct. 1987.
In August 1987, Davis arrived to commence the work, but could not start because defendants had not obtained the necessary removal and replacement permits. Although the removal permit was issued in September 1987, the replacement permit was not obtained until December 1987. Thus, by the specified October 1987 starting date, all the required permits had not been obtained, and therefore, the project was delayed.
In November 1987, defendants notified Davis that as a result of the delay in moving the house, the piling contractor had to reschedule its work. In late November 1987, Juckett contacted Davis to move the house on December 2, 1987, but soon thereafter, told Davis not to move the house as requested. On December 4, 1987, Davis was arrested for theft by deception on a criminal complaint signed by Heidler. Later, in a conversation with Heidler, who Davis claimed would drop or resolve the criminal complaint, Davis agreed to commence the work on December 21, 1987, as all permits had issued. Heidler provided Davis with a letter of authorization to move the house. Thereafter, *269 Davis proceeded over the course of seven days to move the house off its pilings. Additionally, Davis performed extra work to remove a porch which defendants had agreed, but were unable, to remove. Davis claimed Heidler agreed to pay for the extra work.
In January 1988, Juckett informed Davis that the piling contractor would not start his job until the end of the month. Eventually, Davis stopped work because defendants had failed to pay. Ultimately, another house mover placed the house back on its pilings in the late spring of 1988 at a cost of $7,500. On June 10, 1988, Davis removed its steel support equipment which had been under Juckett's house since December 1987.
Davis instituted this action against defendants, seeking to recover $16,600 less the $500 already paid by defendants, plus $3,000 in lost profits, for a total of $19,100. More specifically, Davis claimed $9,000 for the value of the work performed under the contract; $1,200 for the value of the extra work performed; and $6,400 for the rental costs of the steel remaining under the house as specified in the contract (128 days at $50/day). Following a bench trial, the trial court awarded Davis the full value of his claims, and ordered Heidler to pay $19,100 and Juckett to pay $9,000. The $9,000 awarded against Juckett representing the value of the work performed under the contract. The trial court clarified the judgment by providing that the award was not for a total of $28,100 and that in no event did Juckett's obligation under the judgment exceed $9,000. This appeal followed.
We are satisfied from our study of the record and the arguments presented that, with the sole exception of the trial court's awarding Davis $3,000 for lost profits, there is substantial credible evidence in the record as a whole to warrant the findings and conclusions of the trial court and we discern no sound reason or justification for disturbing them. Leimgruber v. Claridge Assocs., 73 N.J. 450, 455-56, 375 A.2d 652 (1977); Rova Farms Resort v. Investors Ins. Co., 65 N.J. 474, 483-84, *270 323 A.2d 495 (1974); State v. Johnson, 42 N.J. 146, 162, 199 A.2d 809 (1964); R. 2:11-3(e)(1)(A). Moreover, all of the issues of law raised are clearly without merit. R. 2:11-3(e)(1)(E). Before turning to defendants' claim that the trial court's award and computation of lost profits constituted plain error, further comment is appropriate with respect to some of defendants' other contentions.

I.
Defendants claim that the trial court's finding that Davis was entitled to 128 days of equipment rental under Paragraph Nine of the contract "was not in accordance with the contract language and, therefore, was not based upon reasonable evidence and constituted plain error." We disagree.
As we summarized in Karl's Sales & Service v. Gimbel Brothers, 249 N.J. Super. 487, 492-93, 592 A.2d 647 (App.Div.), certif. denied, 127 N.J. 548, 606 A.2d 362 (1991):
The polestar of contract construction is to discover the intention of the parties as revealed by the language used by them. Jacob v. Great Pacific Century Corp., 104 N.J. 580, 582, 518 A.2d 223 (1986); Kearny PBA Local # 21 v. Kearny, 81 N.J. 208, 221-22, 405 A.2d 393 (1979); Atlantic Northern Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301, 96 A.2d 652 (1953); Casriel v. King, 2 N.J. 45, 50, 65 A.2d 514 (1949). To this end, the language used must be interpreted "`in accord with justice and common sense.'" Krosnowski v. Krosnowski, 22 N.J. 376, 386-87, 126 A.2d 182 (1956) (citation omitted). As our Supreme Court noted in Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957):
In the quest for the common intention of the parties to a contract the court must consider the relations of the parties, the attendant circumstances, and the objects they were trying to attain. An agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose. Cameron v. International, etc., Union No. 384, 118 N.J. Eq. 11 [176 A. 692] (E. & A. 1935); Mantell v. International Plastic Harmonica Corp., 141 N.J. Eq. 379 [55 A.2d 250] (E. & A. 1947); Heuer v. Rubin, 1 N.J. 251 [62 A.2d 812] (1949); Casriel v. King, 2 N.J. 45 [65 A.2d 514] (1949); Owens v. Press Publishing Co., 20 N.J. 537, 543 [120 A.2d 442] (1956).

See also Jacobs v. Great Pacific Century Corp., 104 N.J. at 582, 518 A.2d 223; Fidelity Union Trust Co. v. Robert, 36 N.J. 561, 567, 178 A.2d 185 (1962); Anthony L. Petters Diner, Inc. v. Stellakis, 202 N.J. Super. 11, 28, 493 A.2d 1261 (App.Div. 1985); Bruenn v. Switlik, 185 N.J. Super. 97, 105, 447 A.2d 583 (App.Div.), certif. denied, 91 N.J. 536, 453 A.2d 857 (1982); *271 Insurance Co. of Penna. v. Palmieri, 81 N.J. Super. 170, 179, 195 A.2d 205 (App.Div. 1963), certif. denied, 41 N.J. 389, 197 A.2d 15 (1964); Union Cty. U-Drive It v. Blomeley, 48 N.J. Super. 252, 256, 137 A.2d 428 (App.Div. 1958).
Also, where an ambiguity appears in a written agreement, the writing is to be strictly construed against the party preparing it. See In re Miller's Estate, 90 N.J. 210, 221, 447 A.2d 549 (1982); Liqui-Box v. Estate of Elkman, 238 N.J. Super. 588, 599, 570 A.2d 472 (App.Div. 1990). This rule of construction is somewhat tempered by the principle that although "a contractual provision should generally be construed narrowly against its drafter [citation omitted], the construction should be sensible and in conformity with the expressed intent of the parties." Broadway Maintenance Corp. v. Rutgers, 90 N.J. 253, 271, 447 A.2d 906 (1982). In this regard,
Even where the intention is doubtful or obscure, the most fair and reasonable construction, imputing the least hardship on either of the contracting parties, should be adopted [citation omitted], so that neither will have an unfair or unreasonable advantage over the other. [Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957)].
However, where the terms of a contract are clear and unambiguous there is no room for interpretation or construction and the courts must enforce those terms as written. Kampf v. Franklin Life Ins. Co., 33 N.J. 36, 43, 161 A.2d 717 (1960); Levison v. Weintraub, 215 N.J. Super. 273, 276, 521 A.2d 909 (App.Div.), certif. denied, 107 N.J. 650, 527 A.2d 470 (1987). The court has no right "to rewrite the contract merely because one might conclude that it might well have been functionally desirable to draft it differently." Id.; Brick Tp. Mun. Util. Auth. v. Diversified R.B. & T., 171 N.J. Super. 397, 402, 409 A.2d 806 (App.Div. 1979). Nor may the courts remake a better contract for the parties than they themselves have seen fit to enter into, or to alter it for the benefit of one party and to the detriment of the other. James v. Federal Ins. Co., 5 N.J. 21, 24, 73 A.2d 720 (1950).
"Effect, if possible, will be given to all parts of the instrument and a construction which gives a reasonable meaning to all its provisions will be preferred to one which leaves a portion of the writing useless or inexplicable." Goldberg v. Commercial Union Ins. Co. of N.Y., 78 N.J. Super. 183, 190, 188 A.2d 188 (App.Div. 1963); see Hudson Foam Latex Products, Inc. v. Aiken, 82 N.J. Super. 508, 516, 198 A.2d 136 (App.Div. 1964). Thus, "[a]n agreement must be construed in the context of the circumstances under which it was entered into and it must be accorded a rational meaning in keeping with the express general purpose." Tessmar v. Grosner, 23 N.J. 193, 201, 128 A.2d 467 (1957); see West Caldwell v. Caldwell, 26 N.J. 9, 24-25, 138 A.2d 402 (1958); Newark Publishers' Ass'n v. Newark Typographical Union, 22 N.J. 419, 426-27, 126 A.2d 348 (1956); *272 Joseph Hilton & Assocs. v. Evans, 201 N.J. Super. 156, 171, 492 A.2d 1062 (App.Div.), certif. denied, 101 N.J. 326, 501 A.2d 977 (1985).
The writing is to have a reasonable interpretation. Disproportionate emphasis upon a word or clause or a single provision does not serve the object of interpretation. The general purpose of the agreement is to be considered in ascertaining the sense of particular terms. The literal sense of particular words or clauses may be qualified by the context and given the meaning that comports with the probable intention. It is the revealed intention that is to be effectuated, the sense that would be given the integration by a reasonably intelligent person. Mantell v. International Plastic Harmonica Corporation, 141 N.J. Eq. 379 [55 A.2d 250] (E. & A. 1947). [West Caldwell v. Caldwell, supra, 26 N.J. at 25, 138 A.2d 402].
Paragraph Nine of the contract provides:
It is understood and agreed that the owner will complete the necessary work so that the contractor's equipment can be removed within 30 days after the building has been moved to the new site, and upon failure to do so, an equipment rental charge of $50.00 per day shall be paid for by the owner until such work has been performed, so that the equipment can be removed.
Contrary to defendants' assertion, the contract terms relating to the equipment rental charges in Paragraph Nine are not ambiguous. Rather, defendants place a disproportionate emphasis on certain terms to create an ambiguity. As indicated by the clear and unambiguous terms of the contract, the purpose of the rental fee was to compensate for the use of Davis' equipment upon which the house rested until the house was relocated to its "new location" and the equipment was removed. Defendants' reading of the contract would nullify its very terms and render the provision useless. In our view, defendants' interpretation of the provision misconstrues the very purpose and plain intent of the contract.

II.
Defendants also contend that "the trial court's award of liquidated damages was plain error as [Davis] failed to meet his heavy burden of proof that the clause was reasonably related to his loss and that the clause did not in fact provide for a penalty." Further, defendants argue that the claim for liquidated damages should have been barred because Davis was *273 responsible in part for the delay in completion of the job. We disagree.
First, we are satisfied that the $6,400 awarded Davis for rental costs of equipment under Paragraph Nine did not constitute liquidated damages, but rather represented a reasonable value for equipment rental. The provision imposed a rental charge not for breach of contract as with a liquidated damage clause, but rather for defendants' failure to complete the work necessary for plaintiff to remove its equipment within thirty days. Since the trial court found that the delay in the project was not due to plaintiff's actions, it properly awarded plaintiff $6,400 for damages resulting from equipment rental charges incurred when it was unable to remove its equipment.
Second, even if the award of $6,400 constituted liquidated damages, we hold that the award was sustainable. "Generally, a liquidated damage clause is enforceable in New Jersey where actual damages which would be sustained upon a breach are difficult to project and are not readily susceptible of proof under the rules of evidence." Central Steel Drum Co. v. Gold Cooperage, Inc., 200 N.J. Super. 251, 259-60, 491 A.2d 49 (App.Div.), certif. denied, 101 N.J. 303, 501 A.2d 960 (1985). As set forth in Westmount Country Club v. Kameny, 82 N.J. Super. 200, 205-06, 197 A.2d 379 (App.Div. 1964):

Liquidated damages is the sum a party to a contract agrees to pay if he breaks some promise, and which, having been arrived at by a good faith effort to estimate in advance the actual damage that will probably ensue from the breach, is legally recoverable as agreed damages if the breach occurs. A penalty is the sum a party agrees to pay in the event of a breach, but which is fixed, not as a pre-estimate of probable actual damages, but as a punishment, the threat of which is designed to prevent the breach. McCormick, Damages, § 146, pp. 599-600.
Parties to a contract may not fix a penalty for its breach. The settled rule in this State is that such a contract is unlawful. Suburban Gas Co. v. Mollica, 131 N.J.L. 61, 62 [34 A.2d 892] (Sup.Ct. 1943).
In the determination of whether a clause in a contract is one for liquidated damages or a penalty, our courts have set up certain criteria as guides. The construction to be placed upon the clause in dispute is to be decided by considering not only the particular words in the contract, but the whole scope of *274 the bargain, including the subject to which it relates. Monmouth Park Asso. v. Wallis Iron Works, 55 N.J.L. 132, 140 (E. & A. 1892).
An agreement made in advance of breach, fixing the damages therefor, is not enforceable as a contract and does not affect the damages recoverable for the breach, unless (a) the amount so fixed is a reasonable forecast of just compensation for the harm that is caused by the breach, and (b) the harm that is caused by the breach is one that is incapable or very difficult of accurate estimate. 1 Restatement, Contracts, § 339, p. 552 (1932). And see Suburban Gas Co. v. Mollica, supra; 218-220 Market St. Corp. v. Krich-Radisco, Inc., 124 N.J.L. 302, 305 [11 A.2d 109] (E. & A. 1939). However, if it appears that the parties have provided for an excessive sum in a case where the real damages are certain or readily reducible to certainty by proof, then the sum fixed is deemed a penalty and is not enforceable. Borden Co., Pioneer Ice Cream Division v. Manley, 127 N.J.L. 461, 463 [23 A.2d 281] (Sup.Ct. 1942).
Upon a consideration of the whole agreement, if it is doubtful whether the provision for payment is intended as a penalty or liquidated damages, it will be construed as a penalty, because the law favors mere indemnity. Monmouth Park Asso., supra, 55 N.J.L., at page 141, 26 A. 140.
Accord Stuchin v. Kasirer, 237 N.J. Super. 604, 613, 568 A.2d 907 (App.Div.), certif. denied, 121 N.J. 660, 583 A.2d 346 (1990); Barr and Sons, Inc. v. Cherry Hill Center, Inc., 90 N.J. Super. 358, 376-77, 217 A.2d 631 (App.Div. 1966); see Monsen Eng'g Co. v. Tami-Githens, Inc., 219 N.J. Super. 241, 252, 530 A.2d 313 (App.Div. 1987).
Thus, "[w]here the fixed sum is a reasonable forecast of just compensation that is incapable of or difficult to assess accurately, liquidated damage clauses are both enforceable and favored in the law." Monsen Eng'g Co. v. Tami-Githens, Inc., supra, 219 N.J. Super. at 252, 530 A.2d 313. Furthermore, in the context of a commercial case with parties of comparable bargaining power, the party asserting the right to liquidated damages has the burden of proof as to "the existence of a valid liquidated damage clause, and the extent of the performance delay," and the party being assessed liquidated damages has the burden "to offer proof of contractually acceptable excuses in order to avoid the application of the liquidated damage clause." Monsen Eng'g Co. v. Tami-Githens, Inc., supra, 219 N.J. Super. at 250, 530 A.2d 313 (footnote omitted); see Ferber Constr. Co. v. Hasbrouck Heights, 90 N.J.L. 193, 196, 100 A. 329 (E. & A. 1917). But see Central Steel Drum Co. v. Gold *275 Cooperage, Inc., supra, 200 N.J. Super. at 263-65, 491 A.2d 49; Utica Mut. Ins. Co. v. DiDonato, 187 N.J. Super. 30, 40-42, 453 A.2d 559 (App.Div. 1982). Here, even assuming that Paragraph Nine was considered a liquidated damage clause, the moneys provided for therein represented reasonable compensation for the rental charges for the equipment, and thus, the provision was valid and enforceable.

III.
We are also satisfied that there was substantial credible evidence in the record to support the trial court's conclusion that Davis was entitled to walk off the job due to defendants' failure to pay him in accordance with the terms of the contract. Davis had performed a substantial portion of the work contracted for by taking the house off its pilings and placing it in its temporary location in December 1987 without compensation. Under the terms of the contract, defendants owed Davis $9,000 at that point in time. Further, defendants did not provide any excuse for their failure to pay, and rather implied that it was simply an over-sight or that the work was not billed by Davis and they were unable to contact him. Additionally, the proofs show that in January 1988, Davis called defendants regarding the piling contractor and was told that the contractor would not be able to start until the end of the month, which was after the thirty-day limitation in the contract. Consequently, in order to lessen the delay, Davis suggested another contractor who could perform the work within a few days. However, defendants opted to wait because the original piling contractor was cheaper. Thereafter, Davis stopped work when defendants were already indebted to him for $9,000.

IV.
We turn to defendants' contention that the trial court erred in awarding Davis $3,000 for lost profits. Defendants argue that the trial court failed to deduct the costs of completing the work *276 when calculating the claimed profits and that, in any event, Davis failed to present any evidence to establish such costs. We agree.
It is fundamental that "[t]here must always be a reasonably accurate and fair basis for the computation of alleged lost profits." Borbonus v. Daoud, 34 N.J. Super. 54, 61, 111 A.2d 443 (Ch.Div. 1955) (citing Rempfer v. Deerfield Packing Corp., 4 N.J. 135, 144, 72 A.2d 204 (1950)); 22 Am. Jur.2d Damages §§ 625, 630 (1988); 11 Williston on Contracts § 1345 (Jaeger ed. 1968). In a construction contract where the contractor has been prevented from completing the project, as here, the contractor is entitled to "such profits as he would have realized as a result of complete performance." Goldman v. Shapiro, 16 N.J. Super. 324, 327, 84 A.2d 628 (App.Div. 1951); accord Zulla Steel, Inc. v. A. & M. Gregos, Inc., 174 N.J. Super. 124, 134, 415 A.2d 1183 (App.Div. 1980); see Kehoe v. Rutherford, 56 N.J.L. 23, 26, 27 A. 912 (Sup.Ct. 1893). "[G]enerally, when it can be determined what, according to the contract, the plaintiff would receive for that which he has done and what profit he would have realized by doing that which, without fault, he has been prevented from doing, then these sums become the legal, as they are the just, measure of his damages." Kehoe v. Rutherford, supra, 56 N.J.L. at 26-27, 27 A. 912; accord De Ponte v. Mutual Contracting Co., 18 N.J. Super. 142, 147-48, 86 A.2d 785 (App.Div. 1952).
The fundamental concept concerning the measure of damages in a case of this kind, where the plaintiff is a supplier, producer or contractor who has been prevented by the defendant from completing his contract, is that the plaintiff is entitled to the profit that would have been realized if performance had been completed. This is generally measured by the difference between the contract price and the cost of performance or production. Boyd v. Meighan, 48 N.J.L. 404, 407 [4 A. 778] (Sup.Ct. 1886); Kehoe v. Borough of Rutherford, 56 N.J.L. 23, 27 [27 A. 912] (Sup.Ct. 1893); Horst Co. v. Peter Breidt City Brewery, 94 N.J.L. 230, 235 [109 A. 727] (E. & A. 1919); DePonte v. Mutual Contracting Co., 18 N.J. Super. 142, 147-148 [86 A.2d 785] (App.Div. 1952); United States v. Purcell Envelope Co., 249 U.S. 313, 320, 39 S.Ct. 300 [302] 63 L.Ed. 620 (1919); Masterton v. Mayor, etc., of Brooklyn [7 Hill 61] supra; 15 Am.Jur., Damages, § 158, p. 575 et seq.; Restatement, Contracts, § 331, Comment b (1932). *277 [Apex Metal Stamping Co. v. Alexander & Sawyer Inc., 48 N.J. Super. 476, 484 [138 A.2d 568] (App.Div. 1958)].
See Kehoe v. Rutherford, supra, 56 N.J.L. at 26, 27 A. 912; 11 Williston on Contracts § 1346 (Jaeger ed. 1968); Restatement (Second) of Contracts § 352 comment b (1979); see also Matter of Community Medical Center, 623 F.2d 864, 866 (3d Cir.1980).
Against this backdrop, we are satisfied that the trial court erred in awarding lost profits without evidence as to the costs of completion of the project. Indeed, the trial court reminded counsel during trial that further testimony was required to establish lost profits. After admonishing counsel, Davis was questioned:
Q.  What was the amount of money that you stand to lose as a result of not being able to complete the job?
A. $3000.
In our view, Davis' bare assertion that he suffered $3,000 in lost profits was insufficient to support an award for lost profits in this case. Moreover, there was no evidence presented as to the costs that were or would have been incurred to complete the project or upon which to calculate such profits. Consequently, we are satisfied that the trial court erred in awarding, as a component of damages, $3,000 for lost profits. The $3,000 lost profit component of the judgment must be and hereby is vacated.

V.
Accordingly, the judgment recovered by Davis is reduced by $3,000 to a total of $16,100. The matter is remanded to the trial court for entry of an amendatory judgment consistent with this opinion and to determine the amount to be paid by each defendant. As so modified, the judgment under review is affirmed substantially for the reasons expressed by Judge Thomas in his oral opinion of March 18, 1991.