**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3220-15T3

WINKS/KRUG LANDSCAPING
SERVICES, LLC,

    Plaintiff-Respondent,

v.

STONEBRIDGE AT WAYNE
HOMEOWNERS ASSOCIATION,
INC., improperly pled as
Stonebridge at Wayne Home
Owners Association, LLC,

    Defendant-Appellant.

_____

Argued May 31, 2017 — Decided August 23, 2017

Before Judges Rothstadt and Sumners.

On appeal from the Superior Court of New Jersey, Law Division, Bergen County, Docket No. L-10111-14.

Jessica A. Tracy argued the cause for appellant (Curcio Mirzaian Sirot, LLC, attorneys; Ms. Tracy and Daniel W. Heinkel, on the briefs).

Harold P. Cook, III, argued the cause for respondent (Harold P. Cook, III Esq. & Associates, attorneys; Mr. Cook, on the brief).

PER CURIAM

Defendant Stone Bridge at Wayne Homeowners Association, Inc. appeals from the Law Division's March 10, 2016 order entering a judgment against it in the amount of $50,000 plus interest and costs, in favor of its former snowplowing contractor, plaintiff Winks/Krug Landscaping Services LLC. After a bench trial, the judge found that defendant breached its contract with plaintiff, including its implied covenant of good faith and fair dealing, by unilaterally and unjustifiably cancelling the contract. She awarded damages to plaintiff in an amount equal to the base amount payable to plaintiff annually under its contract with defendant. On appeal, defendant contends that there was insufficient evidence to support the court's conclusion that defendant breached either its contract or the implied covenant of good faith and fair dealing. Moreover, defendant argues that the court's calculation of plaintiff's damages was incorrect. We disagree as to liability and affirm the trial judge's determination that defendant breached its contract, but we are constrained to remand for reconsideration of plaintiff's damages.

Plaintiff's two principals and defendant's property manager testified on plaintiff's behalf at trial. Defendant's general counsel and a representative from its board testified on behalf of defendant. In addition to that testimony, various documents were admitted into evidence, including the parties' agreement and

various emails that were exchanged between them. The salient facts as found by the trial judge are summarized as follows.

The parties entered into a three-year agreement on October 15, 2012, under which plaintiff agreed to provide plowing services to defendant's townhouse development, as it had done for many years. Under the contract, plaintiff was to remove snow and ice from the roadways from curb to curb. Moreover, plaintiff was to provide all necessary equipment. However, that equipment expressly excluded a "bucket loader or trucks for loading" accumulated piles of snow and removing them to designated sites within the complex.

In exchange for plaintiff's services, defendant agreed to pay plaintiff a rate of $50,000 per year for three years. According to the contract, the base amount would include all charges needed to remove up to a total of fifty-five inches of snow during each snow season. The contract provided for additional charges for removal of snow in excess of fifty-five inches.

The agreement also addressed each party's right to cancel. In one paragraph, it provided that defendant could cancel the contract if, after giving plaintiff twenty-four hours' notice of its deficient performance, plaintiff failed to remedy a specific problem brought to its attention. In another section of the contract, defendant reserved the right to cancel the contract upon

thirty days' notice if "performance by the [c]ontractor is not satisfactory." Likewise, plaintiff had a right to cancel the agreement upon thirty days' notice if it did not receive payment as provided for in the agreement.

Pursuant to the parties' agreement, plaintiff provided plowing services during the winters of 2012-13 and 2013-14 seasons, the latter of which involved periods of very heavy snowfall. According to plaintiff, it was the "seventh snowiest year on record" and required plaintiff to use heavier equipment at increased costs. In February, defendant's property manager wrote an email to plaintiff requesting certain insurance information and thanking plaintiff "for all [it had] done this year."

In September 2014, in anticipation of the upcoming snow season, plaintiff's principals attended a meeting with members of the defendant's board, its attorney, and property manager. At the September 3, 2014 meeting, the parties discussed issues that were caused by the past year's heavy snowfall. There was no discussion, however, of either party wanting to cancel the agreement.

Addressing the issue of accumulated snow during the heavy snowfall, plaintiff's representatives proposed that plaintiff purchase, at defendant's expense of approximately $10,000, a "Bobcat" front loader so large piles of snow could be removed from street intersections, allowing plaintiff to provide defendant with

"curb-to-curb" clearing of the snow and ice during the heavy snowfalls. The equipment would be used by plaintiff and stored on defendant's property. According to plaintiff's representatives, all indications were that defendant had agreed to accept the proposal for the additional equipment. Subsequent emails exchanged between the parties, however, did not confirm or dispute plaintiff's understanding of defendant's acceptance of the proposal to purchase the additional equipment. Rather, they addressed the additional work that plaintiff proposed to perform with the front-loader once purchased. Plaintiff, in reliance upon its principal's understanding of what had occurred at the meeting, purchased the Bobcat front loader for defendant.

Approximately thirty days after the meeting, defendant's attorney sent plaintiff a letter cancelling the parties' agreement. The letter stated, "I am writing to advise that the Board has voted to cancel the snow removal agreement with this 30 day notice." No reason was communicated to plaintiff as to why the board took the action as alleged by counsel.[1] According to defendant's attorney, the cancellation was based upon complaints received from homeowners about plaintiff's performance during the

---

[1] There were no minutes of any meetings or resolutions issued by defendant's board admitted into evidence that confirmed counsel's representations.

prior year and defendant's concern about plaintiff being able to handle the snowfall during the upcoming season. It was undisputed, however, that there were no documents giving notice to plaintiff of any unsatisfactory performance or defendant's intention to cancel the contract or proving the board authorized its counsel to cancel the contract for any reason.

Plaintiff's representatives testified as to its damages arising from plaintiff's cancellation of the contract. According to one of its principal's calculations, plaintiff was entitled to gross damages of $98,900, based upon its prior years' billings to defendant, as adjusted for extraordinary snowfall, and upon its billing to similar townhouse developments in the area. After plaintiff's loss, including deductions for savings on the cost of materials and fuel for its trucks not expended due to the cancellation, its estimated net profit would have been $78,529.

After considering the testimony and other evidence, the trial judge issued an order entering judgment in favor of plaintiff and a twenty-one page written decision setting forth her findings of facts and conclusions of law. In her decision, the judge found that defendant breached its contract because there was no prior notice of any kind at any time that there were problems with plaintiff's performance or that defendant wanted to cancel the contract. Rather, the judge found from the emails sent in February

and September 2014 that defendant intended to continue using plaintiff for snowplowing during the upcoming season. The judge rejected defendant's reliance on its contractual right to cancel, finding that it was a "pretext [and] a fiction," as demonstrated by the fact that there were no complaints about plaintiff's performance during the 2013-14 season or afterward that proved "the performance was not satisfactory to the point of cancellation."

Citing to the testimony of defendant's board member, the judge observed that what came out of the September 3 meeting was that the board wanted a proposal for the additional costs and needed time "to think about it." She further noted that contrary to the cancellation letter, there was no corroborating evidence that defendant's board voted to cancel the contract because it was dissatisfied with plaintiff's performance or otherwise. Similarly, the judge cited to defendant's counsel's testimony that the "board reached no agreement at that meeting" and there was no "evidence at all of any official board decision to terminate."

Relying upon the Court's opinion in Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Center Assoc., 182 N.J. 210, 230-31 (2005), the judge concluded that the meeting exemplified the "collaborative" relationship that existed before the meeting and continued after, the ensuing cancellation was without any

"legitimate purpose," and therefore breached plaintiff's implied covenant of good faith and fair dealing. The judge rejected, however, plaintiff's additional claim that defendant acted fraudulently as she found that defendant did not misrepresent any intention to authorize the purchase of the Bobcat or otherwise induced plaintiff to make the purchase.

Turning to plaintiff's entitlement to damages, and citing to Van Dusen Aircraft Supplies, Inc. v. Terminal Construction, Corp., 3 N.J. 321 (1949) and Interchemical Corp. v. Uncas Printing & Finishing Co., Inc., 39 N.J. Super. 318, 329 (App. Div. 1956), the judge observed, "[p]laintiff is entitled to be awarded damages for such loss of profits as is capable of determination with reasonable certainty" and the fact that they cannot be precisely fixed did not prevent her from awarding them. The judge then observed that plaintiff's billings to defendant for the two prior years varied greatly based upon undefined amounts of snowfall. As a result, they could not be relied upon to determine damages except for the purpose of establishing that plaintiff would have received in 2014-15 at the very least the base annual amount provided for in the contract. She found there was no evidence that plaintiff would have recovered more than that amount for additional snowfall in accordance with the schedule for those charges in the contract.

The scope of our review of a judgment entered in a non-jury case is limited. Seidman v. Clifton Sav. Bank, S.L.A., 205 N.J. 150, 169 (2011). "[I]n reviewing the factual findings and conclusions of a trial judge, we are obliged to accord deference to the trial court's credibility determination[s] and the judge's 'feel of the case' based upon his or her opportunity to see and hear the witnesses." N.J. Div. of Youth & Family Servs. v. R.L., 388 N.J. Super. 81, 88 (App. Div. 2006) (quoting Cesare v. Cesare, 154 N.J. 394, 411-13 (1998)), certif. denied, 190 N.J. 257 (2007). "Findings by the trial judge are considered binding on appeal when supported by adequate, substantial and credible evidence," and "should not be disturbed unless . . . they are so wholly insupportable as to result in a denial of justice." Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 483-84 (1974) (alteration in original). However, we owe no special deference to the judge's legal conclusions. Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "When deciding a purely legal issue, review is de novo." Kaye v. Rosefielde, 223 N.J. 218, 229 (2015) (quoting Fair Share Hous. Ctr., Inc. v. N.J. State League of Municipalities, 207 N.J. 489, 493 n.1 (2011)).

Applying these guiding principles, we turn first to the trial judge's finding that defendant breached its implied covenant of good faith and fair dealing and conclude that it was unsupported

A-3220-15T3

by the evidence. "[W]e start from the premise that 'every contract in New Jersey contains an implied covenant of good faith and fair dealing.'" Kalogeras v. 239 Broad Ave., LLC, 202 N.J. 349, 366 (2010) (quoting Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 (1997)). "Good faith" entails adherence to "community standards of decency, fairness or reasonableness." Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 109-10 (2007) (quoting Wilson v. Amerada Hess Corp., 168 N.J. 236, 245 (2001)). "[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]" Kalogeras, supra, 202 N.J. at 366 (second alteration in original) (quoting Palisades Props., Inc. v. Brunetti, 44 N.J. 117, 130 (1965)).

"The obligation to perform in good faith exists in every contract, including those contracts that contain express and unambiguous provisions permitting either party to terminate the contract without cause." Sons of Thunder, supra, 148 N.J. at 421. "[A] party to a contract may breach the implied covenant of good faith and fair dealing in performing its obligations even when it exercises an express and unconditional right to terminate." Id. at 422.

"'[P]roof of bad motive or intention' is vital to an action for breach of good faith." Badiali v. N.J. Mfrs. Ins. Grp., 220

N.J. 544, 554 (2015) (quoting <u>Brunswick Hills Racquet Club, Inc.</u>, <u>supra</u>, 182 <u>N.J.</u> at 225). A plaintiff must prove the defendant's "bad motive or intention." <u>Brunswick Hills Racquet Club, Inc.</u>, <u>supra</u>, 182 <u>N.J.</u> at 225.

Plaintiff here did not satisfy its burden of proof. It offered no proof that defendant's decision to terminate the contract was an act of a "bad motive or intention." There was no finding by the trial judge based on the evidence that defendant terminated the contract for any particular reason. She only found that the purported reason — dissatisfaction with plaintiff's performance — was unsupported by defendant's proofs.

We do find, however, that the trial judge's conclusion that defendant breached the contract was supported by the evidence at trial. Unlike a situation where a party to a contract has a right to terminate a contract without cause, <u>see</u> <u>Sons of Thunder</u>, <u>supra</u>, 148 <u>N.J.</u> at 421; <u>see also</u> <u>Karl's Sales & Serv. v. Gimbel Bros.</u>, 249 <u>N.J. Super.</u> 487, 495 (App. Div.) ("where the right to terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective"), <u>certif. denied</u>, 127 <u>N.J.</u> 548 (1991), defendant's right to cancel was conditioned upon plaintiff's unsatisfactory performance. The trial judge found that there was no evidence that plaintiff

11

performed unsatisfactorily to the point that defendant decided to terminate the contract for that reason. We have no reason to abandon our deference to those findings, as we do not find "they are so wholly insupportable as to result in a denial of justice." Rova Farms Resort, Inc., supra, 65 N.J. at 483-84.

Having concluded the trial judge properly determined that defendant breached its contract with plaintiff, we turn to the issue of damages. Defendant argues that the trial judge incorrectly relied on the gross revenue plaintiff would have received under the contract as the basis for her award without deducting from that amount plaintiff's related costs that it did not incur by not having to perform plowing services in 2014-15. We agree.

The trial judge correctly determined that plaintiff was entitled to recover its lost profits. See V.A.L. Floors, Inc. v. Westminster Cmtys., Inc., 355 N.J. Super. 416, 422 (App. Div. 2002) ("where the plaintiff is a . . . contractor who has been prevented by the defendant from completing his contract, the plaintiff is entitled to the profit that would have been realized if performance had been completed"). Similarly, the judge found that the contract amount was the correct basis for determining the gross amount plaintiff would be entitled to under the contract. The judge omitted, however, the second step — calculating "the

difference between the contract price and the cost of performance or production." Ibid. (quoting J.L. Davis & Assocs. v. Heidler, 263 N.J. Super. 264, 276 (App. Div. 1993)); see also Cromartie v. Carteret Sav. & Loan, 277 N.J. Super. 88, 103 (App. Div. 1994). "Proof of the relevant costs or expenses is not a matter of mitigation. It is part of the damage case of the party seeking recovery for lost profits." Cromartie, supra, 277 N.J. Super. at 103. That said, we do not require specificity or exactness in calculating lost profits. "Profits lost by reason of breach of contract may be recovered 'if there are any criteria by which probable profits can be estimated with reasonable certainty.'" V.A.L. Floors, Inc., supra, 355 N.J. Super. at 425 (quoting Feldman v. Jacob Branfman & Son, Inc., 111 N.J.L. 37, 42 (E & A 1933)). For example, a plaintiff's historical profit margin in business, rather than exact dollar amounts attributable to the specific contract, can provide a suitable basis to calculate lost profits. See id. at 425-26.

The judge incorrectly awarded plaintiff the full $50,000 even though there was testimony adduced from plaintiff's witness that there would have been costs associated with performance that would not have been incurred, such as fuel charges and the cost of other material. We are therefore constrained to remand the matter to the trial judge for reconsideration of damages.

Affirmed in part; reversed and remanded in part for further proceedings consistent with our opinion. We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14